[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 04-15585 & 05-14955

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 27, 2006
THOMAS K. KAHN
CLERK

D.C. Docket Nos. 01-01407-CV-C-S, 02-00836-CV-C-S &
01-01407-CV-UWC

BURR & FORMAN,
D. FRANK DAVIS, et al.,

Plaintiffs-Appellees,

versus

A. DWIGHT BLAIR,
WILLIAM J. TRUSSELL, et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

**(November 27, 2006)**

Before TJOFLAT and COX, Circuit Judges, and GEORGE,[*] District Judge.

TJOFLAT, Circuit Judge:

These consolidated appeals arise from a dispute among several groups of attorneys over the entitlement to attorney's fees awarded in connection with the settlement of a mass tort litigation in the district court, <u>Tolbert v. Monsanto Co.</u>[1] It appears that on September 21, 1994, A. Dwight Blair and William Trussell entered into a letter agreement with D. Frank Davis obligating their then-respective law firms[2] to share any attorney's fees they might be awarded for representing the plaintiffs in two class actions brought against the Monsanto Company in Alabama state court in 1993 and 1994. Blair and Trussell[3] contend that this letter agreement (the "Letter Agreement") covers the <u>Tolbert</u> litigation

---

[*] Honorable Lloyd D. George, Senior United States District Judge for the District of Nevada, sitting by designation.

[1] No. 2:01-CV-1407-UWC (N.D. Ala. 2001). The <u>Tolbert</u> case, which was filed in 2001, was consolidated with another case against the Monsanto Company filed in April 2002, <u>Oliver v. Monsanto Co.</u>, No. 2:02-CV-836-UWC (N.D. Ala. 2002). The parties refer to these cases collectively under the <u>Tolbert</u> name, and we do the same.

[2] A. Dwight Blair signed on behalf of Blair, Holladay and Parsons, P.C., William Trussell signed on behalf of Trussell & Funderburg, P.C., and, D. Frank Davis signed on behalf of Burr & Forman, LLP ("Burr & Forman").

[3] Blair and Trussell's current law firms are Blair & Parsons, P.C., and Trussell & Funderburg, P.C., respectively. For ease of reference, we refer to these parties collectively as "Blair and Trussell."

and that they are entitled to share in the fees paid to Burr & Forman[4] in that case.[5] Burr & Forman disagreed, so Blair and Trussell sued Burr & Forman for breach of contract in an Alabama circuit court. Burr & Forman removed the case to the district court (where it was consolidated with <u>Tolbert</u>). Following a series of procedural maneuvers, which included the district court's remanding the case to the state court for lack of subject matter jurisdiction, the district court assumed supplemental jurisdiction[6] of Blair and Trussell's attorney's fees claim, determined that the Letter Agreement did not cover the <u>Tolbert</u> litigation and denied the claim, and, invoking the All Writs Act[7] and the Anti-Injunction Act,[8] preliminarily enjoined Blair and Trussell from prosecuting their contract action against Burr & Forman in state court. In these consolidated appeals, Blair and Trussell challenge the district court's assumption of subject matter jurisdiction over their claim

---

[4] Former Burr & Forman partners D. Frank Davis and John E. Norris, the principal partners of Davis & Norris, LLP ("Davis & Norris"), are also involved in a dispute with Burr & Forman over the division of the attorney's fees awarded in the <u>Tolbert</u> litigation and are separate parties to these appeals. Because Blair and Trussell claim a portion of the fees awarded to both Davis & Norris and Burr & Forman, we refer to those two firms collectively as "Burr & Forman," except where circumstances warrant a distinction.

[5] Unlike the situation in the 1993 and 1994 class actions in state court, Blair and Trussell did not appear with Burr & Forman as plaintiffs' co-counsel in the <u>Tolbert</u> litigation.

[6] <u>See</u> 28 U.S.C. § 1367.

[7] <u>See</u> 28 U.S.C. § 1651.

[8] <u>See</u> 28 U.S.C. § 2283.

3

against Burr & Forman, and the court's authority to enjoin them from prosecuting that claim in state court. We conclude that the district court lacked subject matter jurisdiction to adjudicate Blair and Trussell's claim against Burr & Forman and to enter the injunction. We therefore reverse.

## I.

The rulings challenged in these appeals were handed down in two separate orders, one issued on October 18, 2004, the other on August 2, 2005. The October 18, 2004 order denied Blair and Trussell's claim under the Letter Agreement to a portion of Burr & Forman's <u>Tolbert</u> fees (the "Merits Order").[9] We have jurisdiction to review that order under 28 U.S.C. 1291[10] because the district court, after entering the order, directed the entry of judgment pursuant to Federal Rule of Civil Procedure 54(b).[11] The August 2, 2005 order preliminarily enjoined Blair and Trussell from prosecuting their contract action in state court (the

_____

[9] The appeal of the Merits Order appeal is docketed as No. 04-15585.

[10] Section 1291 gives the courts of appeals jurisdiction of appeals "from all final decisions of the district courts."

[11] Rule 54(b) authorizes the district court to enter judgment as to "fewer than all the claims . . . upon an express determination that there is no just reason for delay" in entering the judgment.

4

"Injunction"). We have jurisdiction to review that order under 28 U.S.C. § 1292(a)(1).[12]

We organize this opinion as follows. In part II, we describe the events that preceded the district court's intervention in the parties' attorney's fees dispute and the steps the district court took to resolve it. In part III, we explore the statutory bases relied on by the district court for its authority to issue the Injunction. In part IV, we analyze the issuance of the Injunction in the light of this statutory regime and conclude that the court lacked power to enjoin Blair and Trussell from prosecuting their state court contract action. In reaching this conclusion, we find, and hold, that the court lacked subject matter jurisdiction to issue the Merits Order. Part V concludes.

## II.

The <u>Tolbert</u> litigation was commenced by Burr & Forman[13] in May 2001 in the district court on behalf of 3,000 plaintiffs. The plaintiffs sought compensation for personal injuries and property damage arising out of the Monsanto Company's release of contaminants into waterways in the vicinity of Anniston, Alabama. The

---

[12] Section 1292(a)(1) gives the courts of appeals jurisdiction to review appeals from "interlocutory orders of the district courts . . . granting . . . injunctions." The appeal of the Injunction is docketed as No. 05-14955.

[13] Robert Roden appeared with Burr & Forman as co-counsel for the plaintiffs. He is not a party to these appeals.

Tolbert litigation came to an end on September 9, 2003 with the entry of a final judgment incorporating the parties' settlement agreement. As part of the settlement, Burr & Forman were awarded attorney's fees, which were to be paid out of a qualified settlement fund ("QSF") into which the settlement proceeds and attorney's fee were deposited, to be administered by a settlement administrator under the district court's jurisdiction.

On October 30, 2003, after Burr & Forman rejected Blair and Trussell's demand for a portion of their attorney's fees, Blair and Trussell filed a declaratory judgment action in the St. Clair County, Alabama circuit court,[14] seeking a declaration that they were entitled under the Letter Agreement to forty percent of the attorney's fees awarded to Burr & Forman in the Tolbert litigation.[15] On November 25, 2003, Burr & Forman removed the case to the district court, where it was consolidated with Tolbert.[16] Blair and Trussell promptly moved the court to

---

[14] Blair v. Burr & Forman LLP, No. CV-03-321 (Cir. Ct. St. Clair County, Ala.).

[15] Blair and Trussell contended that the Letter Agreement applied not only to the 1993 and 1994 class actions against Monsanto, but also to "all other claims which each firm may pursue or handle arising out of the actions of Monsanto and all other parties responsible for the placing of PCBs and other contaminants in the waterways of Snow Creek, Choccolocco Creek and Lake Logan Martin." Blair and Trussell asserted that this language embraces the claims Bur & Forman pursued in Tolbert.

[16] The case was consolidated with Tolbert on the ground that it presented issues pending before the Tolbert court. Also consolidated with Tolbert was another removed case, Davis v. Blair, No. CV-03-6533 (Cir. Ct. Jefferson County, Ala.), which presented the same issues. Davis & Norris filed that law suit against Blair and Trussell and Burr & Forman to obtain declarations (1) as to the

6

remand the case for lack of subject matter jurisdiction, contending that the diversity of citizenship required by 28 U.S.C. § 1332 was lacking.[17] Rather than ruling on the motion, the court referred the parties to mediation before the settlement administrator.[18] When a settlement was not reached, the court, on July 6, 2004, remanded the case to the state court on the ground that it lacked subject matter jurisdiction under section 1332.[19]

On August 19, 2004, Burr & Forman moved the district court to enter an order directing the settlement administrator to disburse the attorney's fees

---

proper apportionment of the attorney's fees (as between Davis & Norris and Burr & Forman) awarded to Burr & Forman in the Tolbert litigation, see supra note 4, and (2) as to Blair and Trussell's right, if any, to a portion of such attorney's fees. Burr & Forman removed Davis v. Blair to the district court at approximately the same time that they removed Blair v. Burr & Forman. The district court treated these removed cases in tandem; in separate orders, it remanding both cases to state court and enjoined the plaintiffs from prosecuting their claims. The issues presented in these appeals implicate both cases in the same way; thus, for ease of discussion, we treat the cases together as one case."

[17] Section 1332 gives the district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between [among others] citizens of different States[.]"

[18] The record contains no reference to mediation. Burr & Forman indicate in their brief that after they received Blair and Trussell's motion to remand, the district court referred the parties to mediation before the settlement administrator; that the mediation failed to yield a settlement; that the court thereafter engaged in settlement negotiations with the parties; and that the court's efforts failed.

[19] The court remanded the case as required by 28 U.S.C. § 1447(c), which states in pertinent part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. . . . The State court may thereupon proceed with such case."

remaining in the QSF on terms the court "deemed just."[20] The court granted the motion and, at the same time, ordered Blair and Trussell to show cause why they should be entitled to a portion of the fees. On receipt of the show cause order, Blair and Trussell moved the court to vacate the order, arguing that, because they had never appeared in the Tolbert litigation and had not asked the court for relief, the court lacked jurisdiction over their persons and thus the authority to adjudicate their claim under the Letter Agreement.[21] Blair and Trussell argued, moreover, that the court relinquished any jurisdiction it may have had over their claim when it remanded their case against Burr & Forman to the state court.

The district court disagreed. In an order entered on October 18, 2004 (the Merits Order), the court concluded that it had supplemental jurisdiction over Blair and Trussell's contract claim pursuant to 28 U.S.C. § 1367[22] because, in its view,

---

[20] It is undisputed that the majority of the attorney's fees awarded by the district court in Tolbert had already been disbursed.

[21] Blair and Trussell argued, as they do before this court, that their claim under the Letter Agreement is completely separate from and does not involve any attack on the Tolbert settlement or on the amount of attorney's fees included in the QSF. Blair and Trussell concede that they participated in the court ordered mediation of the fees dispute, but contend that the pendency of their motion to remand at the time preserved their objection to jurisdiction. As we hold that the district court lacked authority to issue the orders challenged in these appeals, we need not reach the issue of whether the district court had personal jurisdiction over Blair and Trussell.

[22] Section 1367 provides, in pertinent part:
  (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have

8

Blair and Trussell were seeking fees to be paid from the Tolbert QSF. It could adjudicate Blair and Trussell's contract claim, the court said, because, in approving the QSF, it had "retain[ed] jurisdiction over the Fund, the parties, and all related matters." The court then proceeded to rule that Blair and Trussell could not recover attorney's fees based on an agreement (the Letter Agreement) made seven years before the Tolbert litigation settled.[23]

Notwithstanding the district court's October 18 order, Blair and Trussell continued to prosecute their contract action in state court.[24] On October 21, the St.

---

supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action . . . founded solely on [28 U.S.C. § ] 1332 . . ., the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons . . . seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

The district court did not explain how it had supplemental jurisdiction over Blair and Trussell's contract claim against Burr & Forman. Nor have Burr & Forman provided an explanation in their brief on appeal.

[23] As noted supra, the court entered judgment against Blair and Trussell pursuant to Fed. R. Civ. P. 54(b), and they appealed.

[24] On October 21, 2004, the St. Clair County Circuit Court ordered the parties to proceed to the merits of the remanded contract action. The court held that Blair and Trussell's claim was not

9

Clair County Circuit Court ordered the parties to proceed to the merits of Blair and Trussell's claim under the Letter Agreement. Three days later, on October 24, Burr & Forman once again removed the case to the district court. Blair and Trussell promptly moved the court to remand the case. On July 22, 2005, the court granted their motion, concluding, as before, that it lacked subject matter jurisdiction under 28 U.S.C. § 1332. In its remand order, the court noted, in passing, that "[t]he remand does not implicate this Court's power under the All Writs Act, 28 U.S.C. § 1651, to effectuate and prevent the frustration of its October 18, 2004, Final Judgment."

Immediately after entering the July 22 remand order, the district court issued an order directing Blair and Trussell to show cause why an injunction should not issue preventing them from prosecuting their contract action in state court. Blair and Trussell responded with a motion to quash the order, once again challenging the court's jurisdiction over their persons.

On July 29, 2005, the district court convened a hearing on the order to show cause and Blair and Trussell's response. Blair and Trussell appeared and stated

---

barred by the district court's October 18, 2004 order (and final judgment based on that order) because that order had no res judicata effect under Alabama law. Res judicata had no effect, the court reasoned, because it had exclusive jurisdiction over the Blair and Trussell's claim once the district court issued its remand order of July 6, 2004.

that they intended to continue to prosecute their state court action even though they had appealed the district court's Merits Order and that appeal was still pending in this court. On August 2, 2005, the district court, drawing on the All Writs Act and the Anti-Injunction Act for its authority, entered an order denying the motion to quash and preliminarily enjoining Blair and Trussell from participating in any further state court litigation pending the resolution of their Merits Order appeal. The district court stated that it was still administering the Tolbert settlement and the QSF and that the services of Burr & Forman continued to be needed.[25] The district court felt that a preliminary injunction was necessary because, "the continued prosecution of the cases in [state court would] effectively nullify the Final Judgment rendered by the present Court and moot the appeal of that judgment to the Eleventh Circuit." As indicated supra, Blair and Trussell appealed the court's August 2, 2005 order.[26]

## III.

---

[25] The court explained the need for Burr & Forman's services: "there are issues for which the plaintiffs' counsels' services are needed with respect to bankruptcy claims, with respect to claims of Medicare. And we have a clinic that, hopefully, will be in existence for ten years; and the lawyers for the plaintiffs will be involved in various aspects of the administration, particularly the financial arrangements, of that clinic."

[26] The court's August 2, 2005 order is before us in No. 05-14955.

11

We begin our resolution of these appeals by reviewing the statutory authority for the Injunction and then turn to the application of that authority in the circumstances before the district court. The district court found its authority to issue the Injunction in the All Writs Act and the Anti-Injunction Act, two statutes that work in conjunction to enable a federal court to exercise its jurisdiction and enforce its judgments and, at the same time, limit the court's ability to interfere with state court proceedings.

A.

The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). In the All Writs Act, Congress codified "the long recognized power of courts of equity to effectuate their decrees by injunctions or writs of assistance[.]" Wesch v. Folsom, 6 F.3d 1465, 1470 (11th Cir. 1993).

Courts have read the language of this statute broadly. The statute has been found to authorize the issuance of writs to protect "not only ongoing proceedings, but potential future proceedings, as well as already-issued orders and judgments." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1099 (11th Cir. 2004) (internal

citations removed). Indeed, unless specifically constrained by an act of Congress, the Act authorizes a court to issue writs any time, "the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." Adams v. United States, 317 U.S. 269, 273, 63 S.Ct. 236, 239, 87 L.Ed. 268 (1942). It is settled law, then, that, "despite its express language referring to 'aid of . . . jurisdiction,' the All-Writs Act also empowers federal courts to issue injunctions to protect or effectuate their judgments." Wesch, 6 F.3d at 1470.

The power to issue writs under the Act is not circumscribed by the identity of the parties immediately before the court; at the court's discretion, writs may be issued to third parties who are in a position to frustrate a court's administration of its jurisdiction. United States v. New York Tel. Co., 434 U.S. 159, 174, 98 S.Ct. 364, 373, 54 L.Ed.2d 376 (1977) ("The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice.").

The broad authority that the Act invests in the federal courts to utilize traditional equitable tools is not unlimited. The Act does not create subject matter jurisdiction for courts where such jurisdiction would otherwise be lacking.

13

Henson v. Ciba-Geigy Corp., 261 F.3d 1065 (11th Cir. 2001) (holding that a federal court may issue an injunction under the Act compelling a state court litigant to dismiss a purely state law case filed in violation of a settlement agreement, but that when the court lacks subject matter jurisdiction, it may not use its All Writs Act authority to remove the case (to federal court) for the purpose of dismissing it.). Instead, the Act provides courts with a procedural tool to enforce jurisdiction they have already derived from another source. Britt Ingham v. Commissioner, 451 F.2d 315, 317 (5th Cir.1971) ("It is settled that . . . the All Writs Act, by itself, creates no jurisdiction in the district courts. It empowers them only to issue writs in aid of jurisdiction . . . acquired on some other independent ground.").[27] Additionally, "[i]t should be noted . . . that '[t]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.'" Klay, 376 F.3d at 1100 (quoting Pennsylvania Bureau of Corr. v. United States Marshals Serv., 474 U.S. 34, 43, 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985)).

B.

---

[27] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

The Anti-Injunction Act serves as a check on the broad authority recognized by the All Writs Act. It prohibits federal courts from utilizing that authority to stay proceedings in state court unless the requirements of one of three narrow exceptions are met. Under the Anti-Injunction Act, an injunction halting a state court proceeding is inappropriate, "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.[28] The All Writs Act and the Anti-Injunction Act are closely related, and where an injunction is justified under one of the exception's to the latter a court is generally empowered to grant the injunction under the former. See Olin Corp. v. Ins. Co. of North America, 807 F.Supp. 1143, 1152 (S.D.N.Y. 1992). Thus, in assessing the propriety of an injunction entered to stop a state court proceeding, the sole relevant inquiry is whether the injunction qualifies for one of the exceptions to the Anti-Injunction Act.

---

[28] On its face, the Anti-Injunction Act could be interpreted as preventing only injunctions issued directly to the state court. It would thus be inapplicable to the present case because the district court enjoined not the state court itself; rather, it enjoined Blair and Trussell from proceeding in the state court. Courts have not interpreted the Act this way, and "it is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties[.]" Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970). See also Klay, 376 F.3d at 1102 n.14. Throughout this opinion we treat injunctions entered for the purpose of halting a state court proceeding the same regardless of whether issued against the parties to the state court proceeding or directly against the state court.

15

The Anti-Injunction Act's animus is clearly rooted in federalism concerns – a desire to avoid tension and preserve comity between the federal and state courts. See Toucey v. New York Life Ins. Co., 314 U.S. 118, 135, 62 S.Ct. 139, 145, 86 L.Ed. 100 (1941) (construing an earlier version of the act) ("The Act . . . expresses the desire of Congress to avoid friction between the federal government and the states resulting from the intrusion of federal authority into the orderly functioning of a state's judicial process."); Wesch v. Folsom, 6 F.3d 1465, 1469 (11th Cir. 1993) ("The question of whether to stay proceedings in a state court is never one to be taken lightly, as it impinges on the very delicate balance struck between the federal and state judicial systems."). Because it is grounded in the constitutional guarantees of independence between the state and federal systems, the language of the Anti-Injunction Act – unlike that of the All Writs Act – is construed narrowly by the courts. The Anti-Injunction Act serves as "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of [the Act's] three specifically defined exceptions." Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 286, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970).

Given the circumstances at hand, Burr & Forman do not, and could not, contend that Congress has "expressly authorized" an injunction to stay the state

court proceeding.  Thus, for the Injunction to have been permissible under the Anti-Injunction Act, it must have been issued under the Act's second or third exception, i.e., it must have been necessary in aid of the court's jurisdiction or to protect or effectuate the court's judgment.

1.

In light of the federalism concerns underlying Anti-Injunction Act, courts construe both the  "necessary in aid of its jurisdiction" and the "to protect and effectuate its judgments" exceptions narrowly.  See T. Smith & Son, Inc. v. Williams,  275 F.2d 397, 407 (5th Cir. 1960) ("The phrase, 'where necessary in aid of its jurisdiction', . . . should be interpreted narrowly, in the direction of federal non-interference with orderly state proceedings."); Delta Air Lines, Inc. v. McCoy Rests., Inc., 708 F.2d 582, 585 (5th Cir. 1983) ("Because of the sensitive nature of federal interference with state court litigation, the exceptions to the rule against injunctions, including the third which applies to relitigation of claims that threatens a federal court's judgment, must be narrowly construed.").

Courts have upheld injunctions predicated on the  "necessary in aid of its jurisdiction" exception in two distinct situations.  The first is where the federal court in an in rem proceeding obtains jurisdiction over the res before the state court action involving the same res is brought.  See In re Abraham, 421 F.2d 226,

17

228 (5th Cir. 1970) (holding injunction of state court proceedings proper where federal court had initial, prevailing jurisdiction over disputed property); Jacksonville Blow Pipe Co. v. R. F. C., 244 F.2d 394, 399–400 (5th Cir. 1957) (upholding injunction of state proceeding seeking to replevy asset sold by trustee). Cf. In re Am. Honda Motor Co., Inc., Dealerships Relations Litig., 315 F.3d 417, 439 (4th Cir. 2003) ("The 'necessary in aid of its jurisdiction' exception to the Anti-Injunction Act is widely understood to apply most often when a federal court was the first in obtaining jurisdiction over a res in an in rem action and the same federal court seeks to enjoin suits in state courts involving the same res."); 17 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris.2d § 4225 (2d Ed. 1988).

Orders enjoining state court proceedings have also been upheld in contexts roughly analogous to proceedings in rem, such as where enjoining the state court proceeding is necessary to protect an earlier federal court injunction. See Wesch, 6 F.3d at 1470 ("When a court issues an injunction, it automatically retains jurisdiction to enforce it."). This use of the exception arose frequently in the school desegregation context. See Valley v. Rapides Parish School Bd., 646 F.2d 925, 943–44 (5th Cir. 1981); Swann v. Charlotte-Mecklenburg Bd. of Ed., 501 F.2d 383, 383–84 (4th Cir. 1974). The exception has also been used in this

18

manner where an injunction was necessary to protect and effectuate complicated judgments over which the federal court had retained jurisdiction.  Wesch, 6 F.3d at 1470–71 (enforcing court-ordered redistricting); Battle v. Liberty Nat. Life Ins. Co.,  877 F.2d 877, 880–82 (11th Cir. 1989) (enforcing complex anti-trust judgment).

These cases, however, represent the outermost limits of the exception.  It is not enough, for example, that the issue before a state court is one implicating an area of law to which Congress has potentially conferred exclusive jurisdiction on the federal courts.[29]  Nor is an injunction necessary in aid of a federal court's jurisdiction when the same claim is being pursued simultaneously in a state court proceeding.  Atl. Coast Line R.R. Co., 398 U.S. at 295, 90 S.Ct. at 1747 ("[T]he state and federal courts had concurrent jurisdiction . . . and neither court was free to prevent either party from simultaneously pursuing claims in both courts.").

---

[29] For example, in T. Smith & Son, Inc. v. Williams,  275 F.2d 397 (5th Cir. 1960), the Fifth Circuit upheld the district court's decision not to enjoin a state court proceeding on the basis that federal courts had ruled that there was exclusive federal jurisdiction over a claim such as the one being pursued by a longshoreman in Louisiana state court.  Louisiana courts had interpreted the federal statute differently holding  that longshoreman remained free to pursue a  remedy under state statutes.  Id. at 407.  The court of appeals held that the Anti-Injunction Act is not  "a mandate to federal courts to hold the line against a possible invasion of a theoretic concept of federal jurisdiction over a field of law supposedly the exclusive domain of federal courts."  Id.  The court noted that the divergent interpretations of the relevant statute were not set in stone and that there is "an orderly system of appeal and review within the state court system, leading up to the United States Supreme Court, that provides a proper method for determining the issues within the established framework of our federal government."  Id.

Indeed, outside of those cases where an analogy can be drawn to in rem proceedings, "the general rule remains . . . that an injunction cannot issue to restrain a state action in personam involving the same subject matter from going on at the same time." 17 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris.2d § 4225 (2d Ed. 1988).

2.

The third exception to the Anti-Injunction Act authorizes a federal court to issue an injunction to, "protect or effectuate its judgements." 28 U.S.C. § 2283. This exception is generally referred to as the "relitigation exception." See Jacksonville Blow Pipe, 244 F.2d at 400. An injunction under the relitigation exception is appropriate where the state law claims would be precluded by the doctrine of res judicata.[30] See Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1104 (11th Cir. 2004) ("Proceedings in other courts that involve the same facts as already issued judgments and orders, or that could result in the issuance of an inconsistent judgment, threaten the jurisdiction of the district court enough to warrant an injunction"); Wesch, 6 F.3d at 1471 ("[The relitigation exception] is

---

[30]In a sense, the relitigation exception empowers a federal court to be the final arbiter of the res judicata effects of its own judgments because it allows a litigant to seek an injunction from the federal court rather than arguing the res judicata defense in the state court. The relitigation exception is not appropriate, however, where the defense of claim preclusion has been presented to the state court, and the state court has rejected it. Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 525, 106 S.Ct. 768, 772-73, 88 L.Ed.2d 877 (1986).

20

essentially a res judicata concept designed to prevent issues that have already been tried in federal court from being relitigated in state court."). A party seeking an injunction of a state court proceeding under the "protect or effectuate" exception "must make a 'strong and unequivocal showing' of relitigation." Delta Air Lines, 708 F.2d at 586. Any doubt regarding whether the requirements of res judicata have been met will be resolved against interference with the state court proceeding. G.M. Brod & Co., Inc. v. Adler, 845 F.2d 899, 900 (11th Cir. 1988) (holding that denial of injunction by the district court was proper where record left doubt as to identity of issues and noting that the preclusion defenses remained available as a defense in the state suit).

When determining whether claim preclusion is appropriate, federal courts employ the law of the state in which they sit. NAACP v. Hunt, 891 F.2d 1555, 1560 (11th Cir. 1990). As this case arose in Alabama, we apply the Alabama approach to res judicata. "Under Alabama law, the essential elements of res judicata are: (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits." Wesch, 6 F.3d at 1471. "If all these elements are, any claim that was or could have been adjudicated in the previous action is precluded." Id.

21

In comparing causes of action, courts inquire "whether the primary right and duty or wrong are the same in each action." Hunt, 891 F.2d at 1561. Claim preclusion does not apply exclusively to those theories and claims actually raised in the prior proceeding but also encompasses all claims that could have been raised from the same nucleus of operative facts. Wesch, 6 F.3d at 1471.

**IV**.

As we observed above, in analyzing the district court's authority to enter the Injunction under the All Writs Act and the Anti-Injunction Act, the analysis merges into a single question: Does the Injunction meet the requirements of an exception to the Anti-Injunction Act.[31]

The district court enjoined Blair and Trussell from pursuing their state court action on the theory that a state court judgment in their favor would "effectively nullify" the Merits Order and "moot the appeal" thereof. The Injunction was

---

[31] Whether an exception to the Anti-Injunction Act provided the district court with authority to issue the Injunction in the circumstances of this case is a question of law. If the court had such authority, whether the Injunction should have issued presents a mixed question of law and fact, which we review under the abuse of discretion. See Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1096–97 (11th Cir. 2004). We find an abuse of discretion if the district court "applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1309 (11th Cir. 2001). In the text following this footnote, we address the question of law, whether an exception to the Act authorized the court to issue the Injunction. We conclude that none of the exceptions were available to the court. Given this conclusion, we need not consider whether the court abused its discretion in taking the action it did.

22

necessary "to effectuate and prevent the frustration" of that order.[32] Although the court's order did not cite the "protect or effectuate" exception of the Anti-Injunction Act, we infer from the language the court used in drafting the order that it based the Injunction on that exception. Burr & Forman agree and contend that the "necessary in aid of its jurisdiction" exception provided an alternative basis for issuing the Injunction. We disagree on both counts.

## A.

We turn first to the availability of the "necessary in aid of its jurisdiction" exception. As indicated above, this exception has been chiefly employed where the federal court has obtained jurisdiction over a disputed res in an in rem proceeding, and the state court proceeding comes afterwards. Use of this exception has also been upheld where the respective proceedings closely resemble an in rem dispute over a res.

---

[32] The district court made additional findings consistent with the traditional requirements for a preliminary injunction. These requirements are that the moving party shows (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction does not issue; (3) the threatened injury to the movant outweighs any damage an injunction may cause the opposing party; and (4) the injunction would not be adverse to the public interest. Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004). These findings are immaterial in this case because the Injunction is not a traditional preliminary injunction. Burr & Foreman had no cause of action against Blair and Trussell upon which a preliminary injunction could be based. Id. at 1098. An All Writs Act injunction is not predicated on a cause of action; rather, it "must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior. The requirements for a preliminary injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns." Id. at 1100.

23

Burr & Forman appear to be presenting two separate arguments for why the Injunction was justified under this exception. First, they argue that the QSF is in fact a res over which the district court had retained jurisdiction. Second, they argue that the QSF is sufficiently analogous to a res for an injunction to be appropriate.[33] Both arguments assume, albeit tacitly, that Blair and Trussell seek a declaration, in their state court contract action, that they have an interest in money held in the QSF, i.e., the money set aside for attorney's fees.

The "necessary in aid of its jurisdiction" exception provides the basis for an injunction "[w]hen particular property is before the district court . . . such as when it is the subject of an in rem proceeding or in the custody of a bankruptcy trustee[.]" Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1103 (11th Cir. 2004). The principle focus of this exception is on parallel in rem proceedings – one in federal court, the other in state court. See Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 641–42, 97 S.Ct. 2881, 2893, 53 L.Ed.2d 1009 (1977) (noting that traditionally the exception has been used to enjoin parallel in rem proceedings, while concurrent in personam proceedings have traditionally been allowed to continue).

---

[33] In the Merits Order, the district court noted that it had twice expressly retained jurisdiction over the QSF, the entire case, and any related matters: in the order establishing the QSF and the final judgment giving effect to the parties' settlement.

Blair and Trussell's contract action is not an in rem proceeding; rather, it is a suit for breach of contract, a quintessential  in personam proceeding.[34]  Blair and Trussell do not seek possession of money contained in the QSF.  What they seek are damages from Burr and Forman for breach of the Letter Agreement.  This is simply not a situation in which a state court in rem proceeding is competing with a federal court in rem proceeding to resolve ownership of a res.  In sum, since Blair and Trussell's contract action is not an in rem proceeding, the fact that the QSF may be a res is immaterial.

Burr & Forman argue alternatively that the Injunction was justified because Blair and Trussell's contract action may affect the disbursement of attorney's fees from the QSF – specifically, the amount paid to Burr & Forman – such that the administration of the QSF was closely analogous to an in rem proceeding.  Burr & Forman assert that under prior decisions of this court, see Wesch v. Folsom, 6 F.3d 1465, 1471 (11th Cir. 1993); Battle v. Liberty Nat'l Life Ins. Co., 877 F.2d 877, 880 (11th Cir. 1989), a district court  may issue an injunction in aid of its

---

[34]Breach of contract claims will often share some resemblance with in rem proceedings but they are distinct claims with distinct elements. See S.E.L. Maduro (Florida), Inc. v. M/V Antonio de Gastaneta, 833 F.2d 1477, 1481–83 (11th Cir. 1987) (finding that earlier judgment for breach of contract did not preclude a later in rem proceeding because the requirement of identity of claims was not met).

jurisdiction, "if the . . . court explicitly retains jurisdiction over the case [and] the case involves afinal [sic] judgment entered on a complex settlement[.]"

This argument, too, is unavailing. First, read correctly, <u>Battle</u> and <u>Wesch</u> do not stand for the broad proposition that the "necessary in aid of its jurisdiction" exception authorizes a federal court to issue injunctions in all cases where it has retained jurisdiction to enforce a judgment incorporating a complex settlement. While neither decision directly involved a disputed res, the injunctions were upheld because of the close analogy between the orders entered in those cases and disputes over a res in an <u>in</u> <u>rem</u> proceeding. <u>Wesch</u>, 6 F.3d at 1470–71 ("a lengthy and complicated class action suit is the virtual equivalent of a res to be administered"); <u>Battle</u>, 877 F.2d at 882 ("This lengthy, complicated litigation is the virtual equivalent of a res." (internal quotations removed)). The simple fact that the district court in the present case entered a judgment implementing a settlement and retained jurisdiction over the settlement fund did not, standing alone, render the Injunction "necessary in aid of its jurisdiction." For an injunction properly to issue, the matter in controversy in the federal court proceeding must be "the virtual equivalent" of a controversy over disputed res in an <u>in</u> <u>rem</u> proceeding <u>and</u> the state court proceeding must constitute a threat to the federal court's resolution of that controversy.

26

Battle and Wesch offer little guidance as to how the parallel federal and state proceedings were sufficiently similar to an in rem proceeding so as to warrant an injunction.[35] Whatever that similarity may have been, the scenario in the case before us is easily distinguishable from both Battle and Wesch.

While, like Wesch and Battle, Tolbert focuses on an order entered in a complex class action over which the district court retained jurisdiction, the similarities between Tolbert and the attorney's fees controversy and Wesch and Battle ends there. Unlike the present case, both Battle and Wesch involved state court proceedings that directly attacked the substance of the federal court's earlier ruling. In Battle, members of the plaintiff class essentially collaterally attacked the federal court's ruling granting class certification by pursuing a nearly identical claim in state court and seeking to avoid the res judicata effects of the federal court's ruling by arguing that the court should not have certified the class. Battle, 877 F.2d at 879-80. Likewise, in Wesch, the state court suit that had been

_____

[35] It is difficult to assess how critical a role the "necessary in aid of its jurisdiction" exception played in either Battle or Wesch because in both decisions, the court went on to hold that injunction was likewise necessary to "protect and effectuate" prior judgments. Wesch, 6 F.3d at 1471–74; Battle, 877 F.2d at 882–83. In a subsequent decision applying Wesch, we clarified that the "the federal court's power to enjoin the state proceedings was based on its need to protect its judgment, not to protect its ability to rule prospectively in ongoing litigation." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1103 n.15 (11th Cir. 2004). Thus, the line between Wesch and Battle's reliance on the "necessary in aid of its jurisdiction" exception – as opposed to its reliance on the "protect and effectuate" exception – is wholly unclear.

27

enjoined under the Anti-Injunction Act had collaterally attacked a district court redistricting plan (which had been upheld on appeal) by asking the state court to adopt a plan the district court had considered and rejected. Wesch, 6 F.3d at 1467–69.

Blair and Trussell's contract action against Burr & Forman does not attack the substance of the Tolbert judgment; that is, a judgment in favor of Blair and Trussell would not threaten the entitlement of the Tolbert plaintiff's to their judgment. Thus, even if we considered the QSF as analogous to a res, the entitlement to that res itself is not in dispute in the state court law suit. The entitlement to the attorney's fees held in the QSF is a wholly separate issue; accordingly, Battle-Wesch do not control our decision.

In sum, nothing in the record indicates that Blair and Trussell's breach of contract action challenges the Tolbert settlement or seeks a lien on the money held in the QSF for attorney's fees. Instead, their state court suit is a run-of-the-mill contract action. It seeks damages, not funds on deposit in the QSF. The district court did not have to enjoin the state court proceedings to enable it to exercise its jurisdiction in Tolbert.

B.

We now turn to the applicability of the "protect and effectuate its judgments" exception, the so-called "relitigation exception." This exception is essentially a res judicata concept. For an injunction to be proper under this exception, each of the claim preclusion requirements of the applicable state law – here, Alabama law – must be met. In Alabama, for res judicata to be applied there must be (1) a prior judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) substantial identity of the parties; and (4) the same cause of action in both law suits. Wesch v. Folsom, 6 F.3d 1465, 1471 (11th Cir. 1993).

The district court's Merits Order easily satisfies the first, third, and fourth requirements. The order reached the merits of the attorney's fees dispute being litigated in state court. The parties involved in that litigation and the parties before the district court (in the attorney's fees matter) were identical. The claim before the state court and the claim addressed in the Merits Order were also identical. Blair and Trussell contend that the second requirement, that the Merits Order was rendered by a court of competent jurisdiction, has not been satisfied. We agree.

The district court twice remanded the state court action pursuant to 28 U.S.C. § 1407(c), first on July 6, 2004 and then on July 22, 2005. In both remand orders, the court noted that it lacked subject matter jurisdiction due to a lack of

29

citizenship diversity between the parties. An order remanding a case for lack of subject matter jurisdiction is not reviewable. 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise[.]").[36] Section 1447(d) bars not only appellate review of a a remand order, but also reconsideration of the order by the remanding district court. Harris v. Blue Cross/Blue Shield of Alabama, Inc., 951 F.2d 325, 330 (11th Cir. 1992).

Much as in our Harris decision, the district court, "having relinquished jurisdiction, could not reassert it [.]" Id. at 330. Once the court remanded the case for the first time, any jurisdiction it may have had over the case ceased. The court, therefore, lacked subject matter jurisdiction to issue the Merits Order disposing of Blair and Trussell's claim. Because the court lacked subject matter jurisdiction to issue it, the order was not entered by a court of competent jurisdiction. Thus, the Injunction does not fall within the Anti-Injunction Act's relitigation exception.

---

[36] Davis & Norris argue that the remand orders were not issued pursuant to 28 U.S.C. § 1447(c), but discretionary, and therefore reviewable under the exception to 28 U.S.C. § 1447(d) recognized in Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976). This argument simply cannot be reconciled with the record in this case. Both remand orders state unequivocally that remand is appropriate for lack of subject matter jurisdiction. The Thermtron exception is thus inapposite.

The district court believed that although it had remanded Blair and Trussell's state law claim, it paradoxically maintained jurisdiction to rule on the claim. The court reasoned as follows. The court had expressly retained jurisdiction – in two orders it had entered in <u>Tolbert</u>, the order approving the QSF and the final judgment implementing the settlement – over issues relating to the settlement. The controversy over attorney's fees related to the settlement. Therefore, the court had supplemental jurisdiction to decide the controversy (and thus was a court of competent jurisdiction and authorized to issue the Injunction.)

There are a number of problems with this reasoning. As noted, a remand for lack of subject matter jurisdiction is not reviewable. In remanding the case, the district court conceded that it lacked jurisdiction. The court was bound by this decision whether or not it was correct. <u>In re Loudermilch</u>, 158 F.3d 1143, 1145 (11th Cir. 1998) (" [I]f the district court remands a case based on reasons set forth in section 1447(c), no review may be had: whether the district court's decision was correct or not makes no difference."). By remanding the fee dispute, but then subsequently asserting supplemental jurisdiction over the same dispute under 28 U.S.C. § 1367(a) the court was, in a sense, reviewing its own remand order by

31

deciding it had jurisdiction over the dispute after all.[37]  This ran afoul of the prohibitions of section 1447(d) and was therefore forbidden.

Burr & Forman contend that the two remand orders are irrelevant because the court explicitly retained jurisdiction over the Tolbert litigation, which has never been remanded, and Blair and Trussell's claim is ancillary to that litigation. To support this contention, they cite numerous decisions from other circuits upholding the exercise by district courts of supplemental jurisdiction under similar circumstances.  See, e.g., Marino v. Pioneer Edsel Sales, Inc., 349 F.3d 746, 751 (4th Cir. 2003); Baer v. First Options of Chicago, Inc., 72 F.3d 1294, 1298 (7th Cir. 1995).

It is certainly the case that these decisions support Burr & Forman's argument that supplemental jurisdiction could have been asserted over the fee dispute because of the district court's retained jurisdiction over the underlying suit.  Absent the  remand, it is possible that jurisdiction over the fee dispute may have been proper under section 1367.  In remanding the case, however, the court

---

[37] If the dispute were not identical, then the other requirements of Alabama's res judicata doctrine would not be satisfied and the injunction would still fail to meet the requirements of the Anti-Injunction Act's relitigation exception.  Burr & Forman do not argue, however, that the October 18, 2004 order disposed of a dispute distinct from the claim presented in the state court proceeding because, self-evidently, if the state court claim was distinct, an injunction would not have been necessary or justified.

effectively ruled that it lacked supplemental jurisdiction under section 1367 to entertain the claim.[38]

Putting this consequence aside, Burr & Forman have not cited a single decision where the district court remanded a claim for lack of subject matter jurisdiction and then asserted supplemental jurisdiction over the claim. This is because no such case exists. A district court's decision to remand for lack of subject matter jurisdiction was a final determination of the court's power to hear the claim. Harris, 951 F.2d at 325. Having remanded the contract action for lack of subject matter jurisdiction, the court was precluded from reconsidering that decision or reaching the merits of the claim even if it was incorrect in ruling that subject matter jurisdiction was lacking. Id. at 330 ("The district court has one shot, right or wrong"). Once the district court had remanded the case its power to adjudicate Blair and Trussell's claim ceased. See Ex parte McCardle, 74 U.S. 506,

_____

[38] After concluding that it lacked jurisdiction of Blair and Trussell's contract claim for lack of citizenship diversity under 28 U.S.C. § 1332, the court could have considered whether it had supplemental jurisdiction under § 1367 – that is, whether, within the language of § 1367, the Blair and Trussell contract claim was "so related to claims in the [Tolbert] action within such original jurisdiction [under which the court was entertaining the Tolbert litigation] that [the claim] form[ed] part of the same case or controversy under Article III of the United States Constitution." In remanding the contract claim to state court, the court presumably considered whether it had supplemental jurisdiction of the claim and concluded that it did not. We say that the court presumably did this because federal courts are duty bound to consider their subject matter jurisdiction sua sponte. See Univ. of S. Alabama v. Am. Tobacco Co., 168 F.3d 405, 409–411 (11th 1999) (outlining a federal court's duty to sua sponte consider its own subject matter jurisdiction).

33

514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

Although we have focused almost exclusively on the Injunction, our analysis applies with equal force to the Merits Order. The district court remanded Blair and Trussell's contract action prior to issuing its first show cause order and prior to issuing the Merits Order. Once the court remanded the case, its power to adjudicate Blair and Trussell's claim ceased. We, therefore, likewise find that the district court lacked subject matter jurisdiction to issue the Merits Order.

## V.

For the foregoing reasons the order granting the Injunction and the Merits Order denying Blair and Trussell's breach of contract claim are

**REVERSED**.

COX, Circuit Judge, specially concurring, in which GEORGE, District Judge joins:

I concur in the result. I agree with much of what Judge Tjoflat has written. I do not join the opinion because I think it decides more than we must decide.

I agree that, following the remands of the cases originally filed in state court, the district court had no jurisdiction over the claims that were the subject of the remands. And, I think that conclusion means that neither exception to the Anti-Injunction Act that Judge Tjoflat discusses would support a finding that the district court had jurisdiction to issue the Injunction. The Injunction was not "necessary in aid of [the district court's] jurisdiction," 28 U.S.C. § 2283, because the district court had no jurisdiction over the remanded claims. And, because the district court was without jurisdiction to enter the merits judgment following the remand, the Injunction was not necessary to "protect or effectuate [the district court's] judgements." *Id.*

We need not address whether the district court could have asserted supplemental jurisdiction over the Blair and Trussell claims because Blair and Trussell were never made parties. They were never joined as parties pursuant to any of the Rules that might have been utilized to join them, were never served with process, and never consented to the jurisdiction of the court. Thus, the purported exercise of supplemental jurisdiction over their claims was improper. "'Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the

35

method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree.'" *See Steans v. Combined Ins. Co. of America*, 148 F.3d 1266, 1270 (11th Cir. 1998) (quoting *Martin v. Wilks*, 490 U.S. 755, 765, 109 S. Ct. 2180, 2186 (1989)).

More than this we need not decide.