**SAN FRANCISCO TECHNOLOGY, INC., Plaintiff,**

v.

**GRAPHIC PACKAGING INTERNATIONAL, INC., Defendant.**

Civil Action No. 1:10–CV–1195–CAP.

United States District Court, N.D. Georgia, Atlanta Division.

June 16, 2011.

Daniel Harlan Fingerman, Kathryn G. Spelman, Mount & Stoekler, P.C., San Jose, CA, Allison S. Hines Ficken, Dovin Malkin & Ficken, LLC, Atlanta, GA, for Plaintiff.

James M. Lennon, Womble Carlyle Sandridge & Rice, PLLC, Wilmington, DE, William M. Ragland, Jr., Matthew Lyndon Jamison, Womble Carlyle Sandridge & Rice, PLLC, Atlanta, GA, for Defendant.

### *ORDER*

CHARLES A. PANNELL, JR., District Judge.

This matter is currently before the court on the motion to alter or amend judgment filed by non-party Eaglewood Consulting, LLC [Doc. No. 232].

### I. Background

#### A. This case

The plaintiff in this *qui tam* case filed suit on December 30, 2009, in the North-

ern District of California alleging violations of 35 U.S.C. § 292 for false patent marking against many defendants. On April 21, 2010, the claims against GPI were transferred to this court [Doc. No. 197]. The substance of the complaint, as it pertains to GPI, is that GPI sold packaging products, including packages used to distribute beverage cans, marked with expired patents in violation of 35 U.S.C. § 292, which forbids falsely marking unpatented items as patented and provides for a penalty of up to $500 per offense. The statute also provides, "Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States."

SF Tech and GPI executed a settlement agreement in this case on February 21, 2011. On March 4, 2011, the undersigned entered an agreed order and final judgment [Doc. No. 231] based on the parties' joint motion for entry of such an order [Doc. No. 230]. The settlement agreement was made between SF Tech "on behalf of itself and as *qui tam* relator and plaintiff representing the United States of America and the general public" and GPI [Doc. No. 230–2, p. 2]. The settlement agreement, inter alia, fully releases GPI

> from and for any and all claims, demands, damages, debts, liabilities, obligations, costs, expenses, liens, attorney fees, and causes of action, of every kind and nature, whether known or unknown, including but not limited to those (a) for violation of 35 U.S.C. § 292 through markings referring to one or more of the Subject Patents or to any other patent owned or controlled by any of the Defendant Releasees, (b) which were or could have been alleged in the Litigation or (c) which otherwise involve GPI products or packaging.

[*id.*].

Further, the agreed final order entered by the court, in accordance with the settlement agreement, contains the following provisions:

> 2. The Court HOLDS and ORDERS that the Complaint, and any and all claims by Plaintiff San Francisco Technology, Inc., the United States of America, *qui tam* relators and/or the general public for any violations of 35 U.S.C. § 292 or any other statute or law related to false marking or false advertising, based on Defendant GPI's marking or advertising of any past or existing product with one or more patent numbers, including but not limited to one or more of the Subject Patents, or with the words "Other Patents Pending" or with language indicating that a product may be covered by a patent, are fully resolved by this Agreed Order and Final Judgment and are hereby dismissed with prejudice.
>
> 3. The Court hereby HOLDS and ORDERS that Defendant and its distributors, direct or indirect customers, endusers and any person acting in concert with any of them shall have, without further liability, a commercially reasonable period of time in which to sell or dispose of past, current and future inventory, and to transition away from products or markings, which might be alleged to violate 35 U.S.C. § 292. Accordingly, Defendant and its direct and indirect customers, distributors, endusers and all persons in concert with any of them may mark, manufacture, sell, distribute, advertise and promote GPI products and packaging, including but not limited to those referring to one or more of the Subject Patents, until January 1, 2012 without further liability.
>
> 4. The Court hereby HOLDS and ORDERS that Plaintiff SF Tech has a valid statutory assignment of the rights of the United States of America to pursue and

dispose of the claims resolved and dismissed in this Agreed Order and Final Judgment.

## B. Eaglewood Consulting

Eaglewood Consulting has filed the motion currently before the court because it is a *qui tam* relator in another False Marking case against GPI before another judge of this court, Judge Richard W. Story: *Eaglewood Consulting, LLC v. Graphic Packaging International, LLC*, Civil Action No. 1:10–CV–03467–RWS ("the Eaglewood Case"). The Eaglewood Case was filed on March 23, 2010, and according to Eaglewood's brief in this case, sets out eleven counts involving six patents. Although two of the three patents involved in the current case are also mentioned in the Eaglewood Case, the Eaglewood Case also contains claims against GPI involving additional patents, additional allegedly infringing products, and allegations that those products were not covered by the patents with which they were marked, without regard to expiration [Doc. No. 232–1, p. 2].

Eaglewood's chief grievance with the order and the settlement agreement in this case is that the language in each is broad enough to preclude the Eaglewood Case from going forward. To complicate matters, it appears that, based on the timing of the settlement agreement, settlement negotiations (and presumably drafting of the settlement agreement) were ongoing while Eaglewood was in contact with GPI regarding Eaglewood's plans to seek leave to amend the complaint in the Eaglewood Case [Doc. No. 232–1, pp. 2–3]. After the agreed final order was entered in this case, GPI moved to dismiss in the Eaglewood Case, citing the preclusive effect of the order in this case [Eaglewood Case Doc. No. 54]. Eaglewood argues that the settlement of this case was the product of collusion between GPI and SF Tech to deprive Eaglewood of the opportunity to litigate its claims against GPI and supports this proposition by noting that the undersigned was never informed by either party to the settlement that another case was pending before Judge Story and that it might be affected [Doc. No. 232–1, p. 5]. In addition, Section 3 of the settlement agreement provides that the parties waive all appeals of the agreed order and final judgment if entered, or, if this court had not entered it, "[T]he parties shall file a stipulation of dismissal with prejudice pursuant to Rule 41(a)." [Doc. No. 203–2, p. 4].

Eaglewood now moves to amend the judgment in this case to reflect that no more than the claims brought by SF Tech have been adjudicated and to free Eaglewood to pursue its *qui tam* claims against GPI.

## II. Analysis

Applicable case law and 35 U.S.C. § 292 establish that settlement agreements, even those as broad as the one in this case, foreclose other *qui tam* actions for false marking against the same defendant. *See Simonian v. Irwin Industrial Toll Co.*, 2011 WL 147717 (N.D.Ill. Jan. 18, 2011) (upholding a broad release, which "encompassed both known and unknown claims," of liability under Section 292 with regard to defined "Expired Patents"). Section 292 says that a defendant "[s]hall be fined not more than $500 for every such offense," and the statute permits "[a]ny person [to] sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States." In effect, private citizens can "file enforcement actions on behalf of the government, in return for a reward for obtaining a money judgment in the government's favor." *Simonian*, at *4. But the use of the singular "person" in the statutory lan-

guage means that only one relator can sue and be entitled to a reward. *See Simonian v. Quigley Corp.,* No. 10–C–1259, 2010 WL 2837180, at *2 (N.D.Ill. July 19, 2010) ("[Section 292] contemplates only a single action brought by a private individual on behalf of the United States. Just as the United States could not bring multiple identical actions against a defendant under the false marking statute, multiple private plaintiffs cannot do so on the government's behalf."). Otherwise, several false marking suits would entitle the United States to multiple recoveries and put a heavy burden on defendants in having to litigate against many relators, with no end in sight due to the broad grant of standing under Section 292.

Eaglewood argues that the settlement agreement is too broad because SF Tech had not been assigned the right to settle Eaglewood's claims [Doc. No. 246, pp. 3–5]. Indeed, other courts have held that a suit is not precluded if the relator in a second *qui tam* action can show that its false marking claims involve different products or patents that are not "substantially similar" to those previously filed by another relator. *See Shizzle Pop, LLC v. Wham–O, Inc.,* No. CV 10–3491 PA, 2010 WL 3063066, at *2 (C.D.Cal. Aug. 2, 2010) (holding that the first-filed rule does not apply because a second *qui tam* action alleged the defendant mismarked a product with a patent different than that in the prior action). However, in *Shizzle Pop* the first-filed suit had not reached a conclusion. While Eaglewood's Complaint alleges additional false marking claims not alleged by SF Tech, the United States has already settled and released all claims against GPI arising under Section 292, including those Eaglewood seeks to assert in this action.

Nothing in this result is inequitable. Relators in *qui tam* actions are acting on the behalf of the United States. *See Stauffer v. Brooks Brothers, Inc.,* 619 F.3d 1321, 1325 (Fed.Cir.2010) ("'[*Qui tam*] statute[s] . . . authorize[ ] someone to pursue an action on behalf of the government as well as himself.'") (quoting *Stauffer v. Brooks Brothers, Inc.,* 615 F.Supp.2d 248, 253 (S.D.N.Y.2009)). Although Eaglewood argues that the settlement agreement does not bind it if the agreement does not also bind the United States, the argument fails to recognize the nature of a *qui tam* action. Citing *Vermont Agency of Natural Resources v. U.S.,* 529 U.S. 765, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000), the Federal Circuit recently opined, "[A] *qui tam* provision operates as a statutory assignment of the United States' rights . . . ." *Stauffer,* 619 F.3d 1321, 1325. Moreover, 35 U.S.C. § 292 "operates . . . to allow individuals to stand in the government's stead, as assignees of the government's claims." *Id.* at 1326.

Much of the case law on 35 U.S.C. § 292 compares or contrasts its provisions with another *qui tam* provision, the False Claims Act, 31 U.S.C. § 3729 *et seq.* The court notes that the False Claims Act contains several safeguards not found in 35 U.S.C. § 292 for protecting the government's interests, which are succinctly summarized as follows:

> [T]he FCA requires the complaint to be served on the Attorney General, allows the government to intervene within 60 days, keeps the complaint sealed while the Attorney General decides whether to intervene, allows the government to take control of the litigation, and requires Department of Justice approval to dismiss the complaint even if the government has not intervened. *See* 31 U.S.C. § 3730.

*Unique Product Solutions, Ltd. v. Hy–Grade Valve, Inc.,* 765 F.Supp.2d 997, 1005 (N.D.Ohio 2011)(vacated and reaffirmed,

2011 WL 924341 (N.D.Ohio Mar. 14, 2011)). Nevertheless, 35 U.S.C. § 290 requires the district court clerk to give notice of any action filed under Title 35 of the United States Code to the Director of the Patent and Trademark Office, a member of the Executive Branch. *See Simonian v. Allergan, Inc.*, 2011 WL 1599292 at \*5 (N.D.Ill. April 28, 2011). Further, Federal Rule of Civil Procedure 24(a) provides,

> [T]he court **must** permit anyone to intervene who ... (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(emphasis added). This provision has been held to require a court to allow the United States, through the Department of Justice, to intervene in actions filed by *qui tam* relators on behalf of the United States under 35 U.S.C. § 292. *See Stauffer*, 619 F.3d 1321, 1328–29 (concluding that the government undoubtedly has an interest and that *res judicata* would apply to any claims settled by a relator on behalf of the government such that "disposing of the action would as a practical matter impair or impede the government's ability to protect its interest").

Despite the procedural safeguards contemplated by Title 35 and the Federal Rules of Civil Procedure for false patent marking cases, at least one court has expressed reservations about the potential preclusive effect of allowing *qui tam* relators to settle cases on behalf of the government:

> Even if it does provide the government the right to intervene, Rule 24 of the Federal Rules of Civil Procedure fails to sufficiently protect the government because it does not require that the government actually be served with a False Marking complaint or any relevant pleadings. While 35 U.S.C. § 290 requires each clerk of a district court to "give notice thereof in writing to the Director [of the United States Patent and Trademark Office]" within one month after the filing of a patent action under Title 35, the only information required to be provided are the names and addresses of the parties, name of the inventor, and the designating number of the patent at issue. The clerk is not even required to provide the statute under which the cause of action has been brought, and it is the Patent Office, rather than the Department of Justice (which would seek to intervene in a lawsuit), that is notified. This hardly constitutes sufficient notice to the government that a False Marking *qui tam* action has been filed. Moreover, by the time the government is informed by the clerk of an action being filed, the case may have already been settled. This presents a unique problem with False Marking *qui tam* actions because relators are likely to be interested in a quick settlement without the delay and expense of protracted litigation. Thus, without even being notified of the *qui tam* action brought on its own behalf, the government may be bound by a settlement and will likely precluded from bringing its own suit under the doctrine of res judicata.

*Unique Product Solutions*, 765 F.Supp.2d at 1004–05 (footnote omitted).

In the present case, however, none of the concerns articulated by the *Unique Product Solutions* court is applicable. Here, GPI sought and obtained approval of the settlement agreement from the Department of Justice. On behalf of the Department of Justice, John Fargo, the Director of the Intellectual Property Staff

with the Commercial Litigation Division, stated that the department did "not object to the settlement and the dismissal order," which he had been asked to review [Doc. No. 234–1, p. 2]. In addition, just as GPI and SF Tech were in communication with the Department of Justice, Eaglewood could have informed the United States of the claims it was bringing. Whether Eaglewood did so is immaterial, however. Either the government had notice of both suits and approved the expansive release language in the settlement agreement anyway or Eaglewood should have better apprised the government of the claims in the Eaglewood Case so the government could have intervened in this case and objected to the expansive settlement language so those claims could go forward. Whichever scenario played out in this case does not constitute grounds for this court to amend its judgment.[1]

The court appreciates the incentives set up by the current procedural framework under the False Marking statute: defendants are encouraged to settle as early as possible and to inject the broadest release language possible into the settlement in order to avoid other *qui tam* suits under Section 292. *Qui tam* relator plaintiffs are encouraged to take the settlement money and agree to any release language regardless of how broad it may be and what other claims it precludes.[2] While the procedural framework of the False Claims Act may be preferable because it eliminates such concerns, the court has no power to change the congressional mandate at issue here. Ultimately, the False Marking cause of action belongs to the United States. And, as noted above, there is no question regarding whether the government had actual notice of the SF Tech suit and settlement in this case. By failing to object to the language of the settlement agreement, the government has, in effect, revoked the partial assignment of its claim to Eaglewood.

## III. Conclusion

Based on the foregoing, the court finds no reason to alter or amend its judgment in this case. Accordingly, Eaglewood's motion [Doc. No. 232] is DENIED.

1. The settlement agreement and final judgment in this case dispose of Eaglewood's claims. Whether the language, "... of every kind and nature, whether known or unknown, **including but not limited to those** ..." (emphasis added) in the settlement agreement [Doc. No. 230–2, p. 2] goes beyond the settlement authority granted to SF Tech is not decided in this order. It is doubtful that SF Tech has the authority to grant some type of blanket immunity to GPI from all claims and causes of every kind, known or unknown. That is not the issue at present.

2. The incentive would be more troubling in the hypothetical situation where a defendant, faced with a seemingly meritorious suit under 35 U.S.C. § 292 filed by one plaintiff, sought out a second plaintiff to sue the defendant and entered a broad settlement agreement with the second plaintiff for an exceedingly low sum. According to the logic of the *Unique Product Solutions* court, a defendant and a willing agent/second plaintiff could usurp the power and standing of both the first plaintiff and the government before the government even had notice of the first suit. Such a scenario is irrelevant to the current case, however, since the Department of Justice had actual notice and approved of the settlement here.