EVANS, Judge, dissenting:
I respectfully dissent from the majority’s determination that we have no jurisdiction to hear this appeal. We have jurisdiction under 28 U.S.C. § 1291 because the district court’s postjudgment Enforcement *1331 Order against Bersin is a final order. It granted all of the relief sought by OBWB’s motion to enforce the judgment against Bersin. OBWB sought, and obtained, an injunction to stop Bersin from continuing to pursue certain state law claims in a pending state court lawsuit. OBWB sought no other relief. This gives us jurisdiction to hear Bersin’s appeal. Thomas v. Blue Cross & Blue Shield Ass’n (Thomas II), 594 F.3d 814, 819 (11th Cir.2010) (“In post judgment proceedings, a post judgment order is final for purposes of section 1291 if it ‘finally settles the matter in litigation’ by disposing of all issues raised in the motion.” (citation omitted)).
We also have jurisdiction under 28 U.S.C. § 1292(a)(1) to hear Bersin’s appeal because the district court’s Enforcement Order significantly changed the scope of the alleged injunction in the Final Consent Judgment issued by the district court. Bersin was not a party in this case in 2011 when the Final Consent Judgment was entered. The Final Consent Judgment did not mention Bersin and Bersin has never been represented by a party[1] in this case. Mamma Mia’s as relator did not represent Bersin. The majority’s statement to the contrary — that Mamma Mia’s represented Bersin “as a member of the public” — is simply incorrect, as discussed below. Thus, the Final Consent Judgment binds only Mamma Mia’s and OBWB. The injunction in the Enforcement Order is specifically aimed at Bersin, a substantive difference. Also, changing the initial (alleged) injunction order to prohibit not just another qui tarn suit but also to prohibit Bersin’s in personam suit for damages against OBWB significantly broadened the scope of the (alleged) injunction which addressed only repetitive qui tarn litigation.
Further, I do not agree that the Final Consent Judgment contained an injunction against anyone, either in form or in function. It was an agreed upon consent judgment between Mamma Mia’s and OBWB only based on their privately negotiated, confidential settlement agreement. It did say “... any future litigation alleging violations of 35 U.S.C. § 292 or any other statute or law related to false marking or false advertising[2] ... is barred.”[3] Because the only signatories to the settlement agreement were Mamma Mia’s and OBWB, this is a simple statement that Mamma Mia’s and OBWB agree that repetitive qui tarn litigation between themselves would be barred.[4] Also, the Final Consent Judgment does not order Mamma Mia’s or OBWB or anyone else to do or not do anything in particular, a classic requirement of an injunction. Black’s Law Dictionary 904 (10th ed.2014) (defining an injunction as “[a] court order commanding or preventing an action”).
The majority errs in failing to recognize that Bersin’s state court suit is not a qui tam action. It errs in failing to recognize *1332 Bersin’s status as a litigant with interests separate from the interests of Mamma Mia’s and OBWB. This impacts both the issue of our jurisdiction and the merits of the appeal. Mamma Mia’s in its capacity as relator had no right and no ability to release Bersin’s third party damages claim against defendant OBWB. Unlike the qui tam claim, the United States did not own Bersin’s state court damages claim and therefore could not assign it. Therefore, Mamma Mia’s as relator representing the United States could not release it. No privity exists between OBWB and Bersin or Mamma Mia’s and Bersin, thus, neither of them in their private capacities had the authority to release Bersin’s state court damages claim against OBWB. The majority is mistaken in reasoning that Bersin could be enjoined from continuing its state court suit against OBWB or deprived of its right to appeal because Bersin is “a member of the public.” Mamma Mia’s as relator was tasked to represent the interests of the United States and the public in stopping false patent claims. Mamma Mia’s did not represent Bersin in negotiating the settlement agreement.
Even if we were to assume that the Enforcement Order against Bersin is interlocutory instead of final, we would have jurisdiction to hear this appeal. The district court relied on the All Writs Act, 28 U.S.C. § 1651, to justify enjoining the state court causes of action, where it had no jurisdiction to do so under the Anti-Injunction Act, 28 U.S.C. § 2283. We have jurisdiction to hear an appeal complaining of the entry of such an injunction. See Estate of Brennan v. Church of Scientology Flag Serv. Org., Inc., 645 F.3d 1267 (11th Cir.2011); Bayshore Ford Trucks Sales, Inc. v. Ford Motor Co., 471 F.3d 1233 (11th Cir.2006); Burr & Forman v. Blair, 470 F.3d 1019, 1023 (11th Cir.2006); Klay v. United Healthgroup, Inc., 376 F.3d 1092 (11th Cir.2004); Peterson v. BMI Refractories, 124 F.3d 1386, 1390 (11th Cir.1997); see also In re BankAmerica Corp. Secs. Litig., 263 F.3d 795, 800 (8th Cir.2001).

FORMER § 292

Before turning to discussion of the merits of the appeal, it is helpful to note the particular nature of former 35 U.S.C. § 292, under which this suit was brought. This version of the Patent False Marking statute was a qui tam[5] statute designed to elicit the assistance of relators who would bring suit against those who falsely marked or falsely advertised the patent status of goods. The statute imposed a fine or penalty[6] of up to $500 per offense; successful relators could keep fifty percent of the penalty imposed, but had to remit the other fifty percent to the United States. While the statute recognized no right of intervention by the United States, intervention was permissible under Rule 24, Federal Rules of Civil Procedure. Stauffer v. Brooks Bros., 619 F.3d 1321, 1328-29 (Fed.Cir.2010); S.F. Tech., Inc. v. Graphic Packaging Int’l, Inc., 798 F.Supp.2d 1333, 1337 (N.D.Ga.2011) (Pannell, J.) (Rule 24 requires a court to allow the United States to intervene in actions filed by qui tam relators under former 35 U.S.C. § 292). While the statute did not require the United States’ agreement to a settlement, it apparently was a common practice for relators to seek approval.
*1333 Former § 292 did not require that the relator have any economic or other injury caused by defendant’s false marking or false advertising or even that there be a pre-existing relationship between the relator and the defendant. The relator’s only role was to represent the government in finding, suing and penalizing those who abuse the patent system, thereby helping to preserve the integrity of the system. Rogers v. Tristar Prods., Inc., 793 F.Supp.2d 711, 723 (E.D.Penn.2011) (“[A] key purpose of the 1952 amendment was to transform the statute into an ordinary criminal statute with a private enforcement mechanism.”); Forest Grp., Inc. v. Bon Tool Co., 590 F.3d 1295, 1302-04 (Fed. Cir.2009). The only courts which have directly addressed the issue have held that a second qui tam case may not be brought against a defendant already found hable for the fine or penalty for the same patent-related misrepresentations. See Simonian v. Irwin Indus. Tool Co., No. 10-1260, 2011 WL 147717 (N.D.Ill. Jan. 18, 2011); S.F. Tech., Inc. v. Graphic Packaging Int'l, Inc., 798 F.Supp.2d 1333 (N.D.Ga. June 16, 2011); Eaglewood Consulting, LLC v. Graphic Packaging Int'l, Inc., No. l:10-CV-03467-RWS, 2011 WL 2489944 (N.D.Ga. June 20, 2011) (Story, J.). The theory of these holdings is not res judicata, but rather that a qui tam claim rests on an implicit statutory assignment of the United States’ right to assert its patent abuse claim. This implicit assignment works only one time; conclusion of the first suit means there can be no further assignment of the United States’ claim. See S.F. Tech., 798 F.Supp.2d at 1336; Eaglewood Consulting, 2011 WL 2489944, at *3 (“the United States has already settled and released all claims against GPI arising under Section 292”). See also Stauffer v. Brooks Bros., Inc., 619 F.3d 1321 (Fed.Cir.2010) (recognizing that the United States’ sovereign interest in preventing patent abuse gives rise to a cause of action which is implicitly assigned to the relator by the qui tam provision of former § 292(b)). Where repetitive qui tam claims are involved-it makes sense that the second suit cannot be brought.

THE MERITS OF THE APPEAL

We should reverse and vacate the district court’s Enforcement Order against Bersin for three reasons. First, the Anti-Injunction Act, 28 U.S.C. § 2283, precludes the district court’s jurisdiction over Bersin’s state court damages suit against BWB and Fassberg. No independent federal jurisdiction exists as to the state law damages claims in the state court suit. Also, the state court damages suit is not a qui tam action and does not involve the same parties as this qui tam suit. Resolution of the qui tam action had no res judicata effect as to the state court action. Second, the district court’s Enforcement Order purports to state, but significantly misstates, the bar language of the Final Consent Judgment, broadening it to include “litigation that either alleges violations of 35 U.S.C. § 292 OR any claims related to false marking or false advertising.” (emphasis added). This is a very important distinction, because the state court litigation does not involve claims under 35 U.S.C. § 292 or claims under “any statute or law related to false marking or false advertising,”[7] but it arguably in *1334 volves state law claims “related to false marking or false advertising” because false patent claims and false advertising are one type of misrepresentation OBWB and Fassberg allegedly made to Bersin. Third, the Releases executed by Mamma Mia’s and OBWB did not purport to release Bersin’s claims against OBWB. They did not mention either Bersin or its claims against OBWB, either directly or indirectly. They only released the mutual claims of Mamma Mia and OBWB against each other. Neither did Mamma Mia’s Release state that it was being executed by Mamma Mia’s in its capacity as representative of the United States.[8] In any event, Mamma Mia’s had no ability to release Bersin’s state court damages claims because those claims were not assigned to Mamma Mia’s as relator. Also, no privity exists between Mamma Mia’s and Bersin or OBWB and Bersin. Neither Mamma Mia’s nor OBWB had the right to release Bersin’s claims for damages against OBWB. Bersin was not consulted about the terms of the settlement agreement. The mutual Releases were a private exchange between Mamma Mia’s and OBWB and did not bind Bersin.

FACTUAL BACKGROUND

The factual summary in the majority opinion is expanded as follows.
- In August 2010 OBWB threatened to sue a large number of defendants, including Mamma Mia’s, in state court over their use of some sort of “water system” which allegedly produced water tasting like water in Brooklyn, New York. OBWB prepared a complaint seeking damages and sent it to Mamma Mia’s and other named defendants[9] with a demand letter. OBWB alleged that the water system/water was a proprietary trade secret which Mamma Mia’s had acquired from individuals who had stolen the trade secret from OBWB. The complaint was filed in a state court in Palm Beach County.
In September 2010 Mamma Mia’s responded by-filing the instant qui tarn action against OBWB seeking an award of the fine/penalty available under former § 292 for OBWB’s false claims of patent protection for the water system/water. The United States did not seek to intervene.
On March 16, 2011 Mamma Mia’s and OBWB signed a privately negotiated Confidential Settlement Agreement (“settlement agreement”) to settle the instant qui tam action and OBWB’s claims against Mamma Mia’s in the state court case in Palm Beach County. The settlement agreement called for a mutual dismissal of claims and a payment of $5,000 by OBWB to Mamma Mia’s and $5,000 to the U.S. government. Nothing in the record suggests that Bersin knew about the settlement discussions. Bersin was not involved in the Palm Beach case. . The settlement agreement did not mention Bersin either directly or indirectly. It did state that Mamma Mia’s agreed “to cooperate with BWB [10] to obtain a bar order relating to *1335 potential future claims and ligation under 35 U.S.C. § 292____”, meaning a bar of another qui tam action.
Mamma Mia’s and OBWB also prepared an agreed-upon Final Consent Judgment and Dismissal with Prejudice. On or about March 16, 2011, Mamma Mia’s and OBWB sent the settlement agreement and proposed Final Consent Judgment to the Department of Justice. These documents are in the record. The motion filed by Mamma Mia’s and OBWB with the district court states that the Justice Department “indicated it had no objection to the settlement agreement or the settlement documents,” although there is no reply document from the Justice Department in the record. Because none of the documents sent to the Justice Department mentioned Bersin either directly or indirectly, there is no basis for an inference that the Justice Department approved OBWB’s later-announced plan to cut off any non-qui tam claims Bersin might have against OBWB. Taking the documents at face value, they pertain only to transactions between Mamma Mia’s and OBWB, plus their respective affiliates.
On March 23, 2011 and March 18, 2011 Mamma Mia’s and OBWB respectively signed General Releases in favor of the other, broadly releasing all claims, including those which were made or which could have been made in the Palm Beach litigation or in this qui tam case.
Mamma Mia’s and OBWB filed their Joint Motion for Entry of Consent Final Judgment of Dismissal on March 24, 2011. The Joint Motion attached a proposed Final Consent Judgment which the district court entered on March 28, 2011. The Final Consent Judgment contained this language:
The Court hereby Orders and Adjudges that any future litigation alleging violations of 35 U.S.C. § 292 or any other statute or law related to false marking or false advertising, with regard to any water treatment system ... water ... that has been marked, advertised or promoted by OBWB prior to entry of this Final Judgment, is barred.
(emphasis added).
Because it is difficult to envision other statutes or laws “related to false marking or false advertising” of patented products except for qui tam statutes, I interpret the foregoing to proscribe repetitive litigation under 35 U.S.C. § 292 or any other qui tam statute, perhaps the current version of § 292 which then was anticipated to take effect, and did take effect, in September of 2011.
The Final Consent Judgment also contained a statement that “[Mamma Mia’s] has a valid statutory assignment of the rights of the United States of America to pursue and dispose of the claims resolved and dismissed in this Stipulation of Dismissal.”
On February 24, 2012 Bersin filed a state court lawsuit in Miami-Dade County against BWB and its owner, Steven M. Fassberg. The Second Amended Complaint filed June 19, 2012 is the operative complaint here. The Second Amended Complaint recites events which occurred beginning in 2010 when Fassberg (alleged founder and chief executive of OBWB/ BWB) and Bersin discussed a business deal for a new location on Alton Road in Miami, Florida. The discussions culminated in an Operating Agreement between BWB, franchisor, and BWB Associates, *1336 Inc, franchisee[11] on August 20, 2010. While the location apparently opened, it was unsuccessful. Bersin blames this on the failures of the BWB entities to live up to their commitments, causing Bersin to have to expend extra money to support the operation. Bersin also complains of a long list of misrepresentations allegedly made by Fassberg/BWB which induced Bersin to invest in the operation, including but by no means limited to representations concerning the patent status of the water system/water used at the Alton Road location.
On March 18, 2013, OBWB filed a pleading in the instant qui tam action entitled Defendant’s Second Motion to Enforce Final Consent Judgment of Dismissal with Prejudice. This pleading was actually OBWB’s first pleading seeking to enforce the consent judgment against Bersin. The pleading labeled First Motion to Enforce was against Florida Bagels, an entirely separate company situated similarly to Bersin in relation to OBWB.[12] Bersin filed a brief in opposition. The district court entered an Order Granting Second Motion to Enforce Final Consent Judgment of Dismissal with Prejudice (Enforcement Order). The order relied upon the All Writs Act, 28 U.S.C. § 1651 and a portion of the Anti-Injunction Act, 28 U.S.C. § 2283, as a jurisdictional basis for its injunction. This order noted the broad release of Mamma Mia’s claims against OBWB and the bar language previously noted. It relied upon Eaglewood Consulting, 2011 WL 2489944, which held that one qui tam suit bars a second qui tam suit against the same defendant. It concluded that: “This Court’s Final Consent Judgment and the Release specifically bars Bersin’s causes of action to the extent that they are based on false marking and advertising claims.” Bersin, as “Non-Party Intervenor”[13] appealed.
Having found jurisdiction to decide this appeal, I would vacate the district court’s Enforcement Order against Bersin because (1) the Anti-Injunction Act, 28 U.S.C. § 2283, precludes the district court’s jurisdiction over Bersin’s state court damages suit; (2) the district court’s Enforcement Order misstates and thereby improperly broadens the language of the Final Consent Judgment; and (3) the Releases executed by Mamma Mia’s and OBWB did not release Bersin’s claims against OBWB.
First, the Anti-Injunction Act, 28 U.S.C. § 2283, precludes the district court’s jurisdiction to enjoin Bersin’s state court damages suit against BWB. The Anti-Injunction Act serves as a check on the broad authority recognized by the All Writs Act, 28 U.S.C. § 1651, by expressly prohibiting a federal court from enjoining state court proceedings “except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.” 28 U.S.C. § 2283. The Anti-Injunction Act and All Writs Act are closely related; “[i]f one of the three specific exceptions contained in the Anti-Injunction Act permits an injunction, the All Writs Act grants a federal court the power to issue it.” Upper Chattahoochee Riverkeeper Fund, Inc. v. City *1337 of Atlanta, 701 F.3d 669, 675 (11th Cir. 2012) (citation omitted). “Thus, in assessing the propriety of an injunction entered to stop a state court proceeding, the sole relevant inquiry is whether the injunction qualifies for one of the exceptions to the Anti-Injunction Act.” Burr & Forman v. Blair, 470 F.3d 1019, 1028 (11th Cir.2006).
The third exception to the Anti-Injunction Act, a federal court granting an injunction “to protect or effectuate its judgments,” is at issue here. Generally referred to as the “relitigation exception,” this exception “is appropriate where the state law claims would be precluded by the doctrine of res judicata.” Id. at 1029-30 (internal quotation marks and citations omitted). A party seeking an injunction of a state court proceeding under this exception must make a strong and unequivocal showing of relitigation. Delta Air Lines v. McCoy Rests., 708 F.2d 582, 586 (11th Cir.1983).
“Federal courts apply the law of the state in which they sit with respect to the doctrine of res judicata.” NAACP v. Hunt, 891 F.2d 1555, 1560 (11th Cir.1990) (citation omitted). “Under Florida law, res judicata applies where there is: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; (4) identity of the quality [or capacity] of' the persons for or against whom the claim is made; and (5) the original claim was disposed on the merits.” Lozman v. City of Riviera Beach, 713 F.3d 1066, 1075 (11th Cir.2013) (internal quotation marks and citations omitted). As to the third element, “[r]es judicata applies only when the parties to the action, or their privies, are identical in the prior and subsequent action.” Id. at 1075 n. 7.
Here, the second, third and fifth elements required for res judicata to apply are not met. The causes of action are not the same. The first action (the instant case) is a qui tam suit brought by Mamma Mia’s on behalf of the United States pursuant to 35 U.S.C. § 292. The subsequent action, however, is not a qui tam action but a private cause of action brought by Bersin under Florida common law and statutory law.[14] Further, Bersin is not seeking to litigate the false marking and false advertising claims that were the subject of' the qui tam suit. Rather, Bersin brings independent state law tort and Florida Deceptive and Unfair Trade Practices Act (“FDUPTA”) claims that are only in part related to the false patent marks and advertisements.
Further, the parties to the prior and subsequent actions are not identical. This qui tam action involves Mamma Mia’s as relator and OBWB as defendant. Neither of them is involved in the subsequent litigation between Bersin and BWB. Bersin was not involved in this qui tam action and is not in privity with any party that was. Therefore, res judicata is inapplicable here.
Because res judicata does not preclude Bersin’s claims, the Bersin case does not fall within the specific relitigation exception of the Anti-Injunction Act. Therefore, the district court lacked jurisdiction under the Anti-Injunction Act to enjoin the state court proceedings.
Even assuming arguendo that the district court did have jurisdiction to enjoin the state court proceedings, I would vacate and reverse the Enforcement Order be *1338 cause Bersin’s Miami-Dade County state court claims against OBWB are not barred by the plain language of the Final Consent Judgment. The Enforcement Order purports to state, but actually misstates and broadens the language of the Final Consent Judgment to cover Bersin’s claims.
The Final Consent Judgment says:
The Court hereby Orders and Adjudges that any future litigation alleging violations of 35 U.S.C. § 292 or any other statute or law related to false marking or false advertising, with regard to any past or existing product, advertising regarding patent process, water treatment system, technology, water, ice cubes or “Cubsta Machine,” covered by this Stipulation of Dismissal, that has been marked, manufactured sold, distributed advertised or promoted by OBWB prior to entry of this Final Judgment, is barred.
(emphasis added). The district court’s Enforcement Order, however, mistakenly says that the Final Consent Judgment “expressly states that any future litigation related to false marking or false advertising with regard to the OBWB’s past or existing product, advertising regarding patented process, water treatment system, technology, water, ice cubes or ‘Cubsta machine’ is covered by the Final Consent Judgment and is barred.” (emphasis added).
This interpretation of the Final Consent Judgment as barring all litigation related to false marking or false advertising considerably broadens the actual language of the Final Consent Judgment, which barred only litigation alleging violations of any statute or law related to false marking or false advertising. While Bersin’s claims for inducement,[15] negligent misrepresentation,[16] and FDUTPA violations[17] are partially based on Fassberg’s representations regarding the allegedly patented water treatment process, Bersin does not allege violations of 35 U.S.C. § 292 or of any state law or statute related to false advertising or false marking in its state court case. In fact the applicable laws and statute under which Bersin is suing make no reference to false marking or advertising. Further, Bersin’s claims are also based upon BWB’s and Fassberg’s misrepresentations regarding the provision and management of daily business operations. These claims have no relation whatsoever to false marking or false advertising. Therefore, Bersin’s state court claims are not barred by the Final Consent Judgment.
*1339 Additionally, Bersin’s state court claims are not barred by the Releases executed by Mamma Mia’s and OBWB, because they did not purport to release Bersin’s claims against BWB. The releases make no mention either of Bersin or its claims against OBWB. Rather, they only released the mutual claims of Mamma Mia and OBWB against each other. The Releases also do not state that Mamma Mia’s was acting in its capacity as representative of the United States in executing its Release.
Finally, Mamma Mia’s as relator had no authority to “release” Bersin’s right to pursue its state court damages claim against OBWB because the United States did not own this claim, and it could not have been the subject of a statutory assignment to the relator. The district court’s Enforcement Order to the contrary is error as a matter of law.
In sum, I respectfully dissent from the majority’s determination that we have no jurisdiction to hear this appeal, and having found jurisdiction, would reverse and vacate the district court’s Enforcement Order against Bersin.

. I interpret "false advertising” here to mean advertising which falsely represents the patent status of a product.

.This is the entirety of the so-called “bar order” in the Final Consent Judgment.

. The settlement agreement’s reference to “any other statute or law relating to false marking or false advertising” is a probable reference to future versions of the Patent False Marking statute, including the current version of § 292 which succeeded former § 292 in September 2011. It seems doubtful that any state statute or law would address misuse of the federal patent system.

. A qui tam action is "[a]n action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specific public institution will receive.” Black’s Law Dictionary 1444 (10th ed.2014).

. Former § 292(a) says "fine”; § 292(b) says "penalty.”

. The state law claims brought by Bersin against OBWB are for: (1) fraud in the inducement, (2) negligent misrepresentation and omissions and (3) violations of FDUTPA. The Enforcement Order first enjoins all three claims "to the extent they allege false marking or false advertising claims” but then in the conclusion section states: "The causes of action ... that relate to patent and product advertising, including all the materials and statements made prior to March 28, 2011 are ENJOINED. This injunction includes each of *1334 the three counts in the Bersin Bagels Litigation.” Thus, the injunction language is internally inconsistent and could cause confusion in the state court proceeding.

.It is easy to see why the United States would not want Mamma Mia’s to grant a blanket exemption from any claims which the United States might have against OBWB.

. The other defendants were Famous New York Baking Water Corp., Donald S. Kurtzer, Angela Bean, Quality Water Installations, Inc., Luis Figueroa, Bates Private Retail, Inc., Bruce Bates, Fitness and Health by CLA, Inc., and Christian Lezmez.

. The reference to BWB as opposed to OBWB is not an error. BWB is a subsidiary of OBWB and was the franchisor of the vari *1335 ous bagel locations. Thus, BWB was a potential target of qui tam suits like the one Mamma Mia’s brought against OBWB.

. The members of BWB Associates, Inc. were Bersin and BWB-South Beach (a/k/a BWB-SB).

. Florida Bagels initially appealed the Enforcement Order entered against it but settled with OBWB before oral argument in this qui tam case took place.

.Regardless of how Bersin's role is labeled, it did submit itself to the jurisdiction of the district court when it filed its brief in opposition to OBWB’s Motion to Enforce Judgment. Bersin does not argue otherwise.

. The district court’s reliance on Eaglewood Consulting, 2011 WL 2489944, to bar Bersin’s claims is misplaced. In Eaglewood, the court held that one qui tam suit bars a second qui tam suit against the same defendant. Id. As the Bersin state court suit is not a qui tam action, Eaglewood does not apply.

. "The elements of an action for fraud in the inducement under Florida law are (1) misrepresentation of a material fact, (2) by someone who knew or should have known of the statement's falsity, (3) with intent that the representation would induce another to rely and act on it, and (4) injury suffered in justifiable reliance on the representation.” Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co., 336 F.Supp.2d 1239, 1284 (S.D.Fla. 2004).

. The elements of a negligent misrepresentation claim under Florida law are "(1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely ... on the misrepresentation; and (4) injury resulted to the plaintiff in justifiable reliance upon the misrepresentation.” ViSonic Sys. v. AT&T Digital Life, 971 F.Supp.2d 1178, 1196 (S.D.Fla.2013).

.Bersin asserts violations of the FDUTPA under Fla. Stat. §§ 501.203(3)(a), 501.204. Fla. Stat. § 501.203(3)(a) defines a violation as one which violates "any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. §§ 41 et seq.” Fla. Stat. § 501.204 states that “[ujnfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.”