[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-11748

_____

D.C. Docket No. 9:10-cv-81106-KLR


THE ORIGINAL BROOKLYN WATER BAGEL CO., INC.,
a Florida corporation,

                                        Defendant - Appellant,

versus


BERSIN BAGEL GROUP, LLC,

                                        Interested Party - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 25, 2016)


Before MARCUS, JORDAN, and BLACK, Circuit Judges.

MARCUS, Circuit Judge:

At issue today is whether the district court erred by refusing to issue an order to show cause why Bersin Bagel Group ("Bersin") should not be cited for contempt for prosecuting a series of state law claims in a Florida court after having been enjoined from doing so by the federal court. This is the second trip this case has taken to our Court. The first time we considered the matter, we concluded that the Court lacked jurisdiction to entertain the appeal and, therefore, we declined to rule on its merits. This time, now clothed with jurisdiction, we conclude that the district court did not abuse its discretion by declining to enjoin Bersin from prosecuting its case against Original Brooklyn Water Bagel ("OBWB") in state court. Nor did the district court err in declining to hold Bersin in contempt. The limits Congress has imposed on federal courts through the Anti-Injunction Act deprived the district court of the power to enjoin Bersin from prosecuting its state court suit. Moreover, even if the district court had the power to issue such an injunction, it would have been improper on the merits to bind Bersin to a settlement release it had no part in negotiating and from which it obtained no benefit. Thus, we affirm the judgment of the district court.

## I.

Appellant OBWB is a Florida corporation and the parent company of Brooklyn Water Bagel Franchise Co. ("BWB"), which franchises a quick-service restaurant concept featuring the sale of bagels, coffee, bottled water, and related

2

products.  Steven M. Fassberg is OBWB's and BWB's CEO and former president.[1]

Appellee Bersin is a Florida limited liability company that entered into a franchise

agreement with BWB in August 2010 to open a restaurant in Miami-Dade County.

Bersin alleges in its state court suit, among other things, that it suffered damages

from the deal because of many serious misrepresentations made by Fassberg and

his companies.  However, OBWB argues that Bersin's claims were released as part

of a settlement in a federal qui tam action involving allegedly false patent marking

by OBWB.

The qui tam action was commenced by Mamma Mia's Trattoria, Inc.

("Mamma Mia's"), on behalf of itself and the United States in the United States

District Court for the Southern District of Florida.  The suit alleged violations of 35

U.S.C. § 292, which at that time provided, inter alia:

> (a) . . . Whoever marks upon, or affixes to, or uses in
> advertising in connection with any unpatented article, the
> word "patent" or any word or number importing that the
> same is patented, for the purpose of deceiving the public
> . . . [s]hall be fined not more than $500 for every such
> offense.
>
> (b) Any person may sue for the penalty, in which event
> one-half shall go to the person suing and the other to the
> use of the United States.

---

[1] A more detailed recitation of the facts and procedural history may be found in the Court's earlier opinion in this matter.  See Mamma Mia's Trattoria, Inc. v. Original Brooklyn Water Bagel Co., 768 F.3d 1320 (11th Cir. 2014).

35 U.S.C. § 292 (2006).[2]  Specifically, the suit asserted that OBWB falsely claimed to possess patents to a water treatment process that would create water identical to that used and sold in Brooklyn, New York.  But, Mamma Mia's said, OBWB neither owned nor held such patents.

Mamma Mia's, with the consent of the United States Department of Justice, entered into a Settlement Agreement with OBWB.  In it, OBWB agreed to make a total payment of $10,000, half of which was to be paid to Mamma Mia's and half to the United States in accordance with 35 U.S.C. § 292(b).  The district court entered a Final Consent Judgment, finding that Mamma Mia's had standing to pursue and dispose of the claims on behalf of the United States and the general public pursuant to 35 U.S.C. § 292.  In dismissing the action, the district court also

> ORDER[ED] and ADJUDGE[D] that any future litigation alleging violations of 35 U.S.C. § 292 or any other statute or law related to false marking or false advertising, with regard to any past or existing product, advertising regarding patented process, water treatment system, technology, water, ice cubes, or "Cubsta machine", covered by this Stipulation of Dismissal, that has been marked, manufactured, sold, distributed, advertised or promoted by OBWB prior to entry of this Final Judgment, is barred.

---

[2] In 2011, Congress amended the false marking statute so that "[o]nly the United States may sue for the penalty authorized by this subsection," 35 U.S.C. § 292(a) (2012), except "[a] person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury," id. § 292(b).  See Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 16(b)(1-2), 125 Stat. 284, 329 (2011).

A year after entry of the Final Consent Judgment, Bersin sued Fassberg and BWB in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, alleging that Bersin had been induced into investing more than $350,000 in a BWB franchise through fraud and misrepresentations, some of which concerned OBWB's advertising of patented technology. The complaint broadly claimed that Fassberg made a series of promises and representations that he ultimately did not fulfill. Bersin asserted three state law causes of action: (1) fraud in the inducement; (2) negligent misrepresentation and omission; and (3) violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201-.213. Of the three, only the last made direct mention of the patent issue, although the issue could be read as a component in the other counts.

In order to defeat Bersin's claims, OBWB moved the federal district court in the qui tam action to bar Bersin from prosecuting those claims in state court. The district court agreed and entered an Enforcement Order granting OBWB's motion. It concluded that Bersin was "asserting barred claims" in the state court action because "the main underlying basis for all of these claims [is] false marking and advertising, which [was] released and barred by the Settlement Agreement and Final Consent Judgment." As a result, Bersin was enjoined from pursuing each of its state claims.[3]

---

[3] In its Enforcement Order, the district court

5

In Round One, we determined that the Court had no jurisdiction to entertain the appeal and, therefore, dismissed the case.  Original Brooklyn Water Bagel Co., 768 F.3d at 1324.  Specifically, we concluded that "enforcement of a permanent injunction is not final unless it holds a party in contempt of court or imposes a sanction for violating the injunction" -- neither of which was present.  Id. at 1325-26 (emphasis omitted).  Since we found ourselves without jurisdiction to entertain the appeal, we "pass[ed] no judgment on whether the district court acted within its broad equitable authority in issuing so sweeping an injunction[] [and said] nothing about the enforceability or indeed about the advisability of the injunction entered by the district court."  Id. at 1330.

On remand, the district court reconsidered its earlier decision.  After conducting a hearing on the matter, the trial court vacated the injunction and lifted the order enjoining Bersin from pursuing its state court claims.  OBWB nevertheless moved the district court for an order to show cause why Bersin should not be held in contempt for failing to comply with the now-vacated injunction.  Not

---

ORDER[ED] AND ADJUDGE[D] that the motion to enforce final consent judgment of dismissal with prejudice . . . is GRANTED. The causes of action in [Bersin's state suit] that relate to patents and product advertising, including all the materials and statements made prior to March 28, 2011 are ENJOINED. This injunction includes each of the three counts in the Bersin Bagels Litigation:

    a. Count I—fraud in the inducement;
    b. Count II—negligent misrepresentation and omission;
    c. Count III—violation of FDUTPA.

6

surprisingly, the district court denied the motion, observing that it had vacated the federal injunction that had formed the basis for barring Bersin from prosecuting its state law claims in state court.

## II.

OBWB now appeals from the district court's denial of its motion for an order to show cause. We have jurisdiction over such denials and review them for an abuse of discretion. Thomas v. Blue Cross & Blue Shield Ass'n, 594 F.3d 814, 818, 821 (11th Cir. 2010). Moreover, the grant or denial of injunctive relief is likewise reviewed only for an abuse of discretion. Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1096 (11th Cir. 2004). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1336 (11th Cir. 2002) (internal quotation marks omitted). "A district court may also abuse its discretion by applying the law in an unreasonable or incorrect manner." Klay, 376 F.3d at 1096.

## A.

The district court did not abuse its discretion. Having properly vacated its injunction barring Bersin from pursuing its state law claims, there was no basis to cite Bersin for contempt. Indeed, far from applying an incorrect legal standard or

7

applying the law in an unreasonable manner, the district court correctly declined to exercise equitable authority it did not have.

OBWB claims, however, that the district court had the power to enjoin Bersin from pursuing its state court claims under the All Writs Act. We disagree. The All Writs Act allows the federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This enables the federal courts to "safeguard not only ongoing proceedings, but potential future proceedings, as well as already-issued orders and judgments." Klay, 376 F.3d at 1099 (footnotes omitted). Thus, for example, a federal court may issue an order necessary to interpret and enforce a settlement agreement over which the court has retained jurisdiction or enjoin separate litigation of issues resolved by a class action. In re Managed Care, 756 F.3d 1222, 1233 (11th Cir. 2014); Henson v. Ciba-Geigy Corp., 261 F.3d 1065, 1068 (11th Cir. 2001). The authority granted by the All Writs Act, however, is cabined by the Anti-Injunction Act. Burr & Forman v. Blair, 470 F.3d 1019, 1027 (11th Cir. 2006). The Anti-Injunction Act explicitly bars a federal court from enjoining "proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. An

8

injunction halting a state court proceeding is proper only if it qualifies for one of the Anti-Injunction Act's exceptions. Burr & Forman, 470 F.3d at 1028.

The Anti-Injunction Act's "core message is one of respect for state courts." Smith v. Bayer Corp., 131 S. Ct. 2368, 2375 (2011). In light of this concern for federalism, we are obliged to construe the Act's exceptions narrowly. Id.; Burr & Forman, 470 F.3d at 1028. Thus, a federal court may enjoin state court proceedings "only if preclusion is clear beyond peradventure." Smith, 131 S. Ct. at 2376. "An injunction under the relitigation exception is appropriate where the state law claims would be precluded by the doctrine of res judicata." Burr & Forman, 470 F.3d at 1029-30. "Any doubt regarding whether the requirements of res judicata have been met will be resolved against interference with the state court proceeding." Id. at 1030.

When determining whether res judicata applies, federal courts look to the law of the state in which they sit. NAACP v. Hunt, 891 F.2d 1555, 1560 (11th Cir. 1990). In Florida, for "res judicata to apply, there must be four identities: (1) identity of thing sued for, (2) identity of cause of action, (3) identity of persons and parties to the action, and (4) identity of quality or capacity of persons for or against whom the claim is made." Hicks v. Hoagland, 953 So. 2d 695, 698 (Fla. Dist. Ct. App. 2007) (internal quotation marks omitted). Where a case has been settled, the

9

principles of res judicata apply to the matters specified in the settlement agreement. Norfolk S. Corp. v. Chevron, U.S.A., Inc., 371 F.3d 1285, 1288 (11th Cir. 2004).

The district court originally enjoined three claims in the Bersin litigation: fraud in the inducement, negligent misrepresentation and omission, and violation of FDUTPA. Notably, res judicata does not apply to these claims -- and thus the relitigation exception is inapposite -- because neither the parties nor the issues involved are the same as those resolved in the false marking settlement. That the parties are different is self-evident. Bersin was not part of the earlier suit or its settlement and, thus, is not bound by the judgment in that suit under the established rules of preclusion. See Smith, 131 S. Ct. at 2379.

Moreover, the causes of action involved in Bersin's state court suit differ markedly from those raised in the qui tam action brought by Mamma Mia's, thus also defeating the required identity of claims. Mamma Mia's initially alleged a violation of 35 U.S.C. § 292, which applies if a party "marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public." Bersin, in contrast, does not allege any violations of 35 U.S.C. § 292 or any other statute or law related to false marking or false advertising. Indeed, the first two counts of the state court complaint do not make explicit reference to the alleged patent violations at all, instead focusing broadly on

10

a long list of allegedly false promises Fassbender made in enticing Bersin's investment. Totally apart from the patents issue, Bersin's complaint alleges that, contrary to Fassbender's promises, OBWB failed to market or advertise the new franchise location, hire competent employees or staff (even hiring managers with criminal records), ensure that the location was properly stocked with food and water bottles, hire plumbers to fix broken pipes and toilets, account for food waste, and provide beneficial relationships to vendors, among other alleged wrongdoing. The mention of patents comes primarily from Bersin's allegations that OBWB deceived it through false claims to hold patented technology, which made it more attractive for an investing franchisee. Taken as a whole, these allegations are very different from a false marking claim brought pursuant to § 292. Unlike a § 292 claim, Bersin is not suing because OBWB committed acts to deceive the public; Bersin complains that OBWB defrauded it directly through personal misrepresentations.

To be sure, false patent claims form a part of Bersin's FDUTPA claim. Still, there is not the strict identity of causes of action necessary to satisfy res judicata. Though some of the issues in the claims may be the same, Bersin brings a different cause of action, for a different harm, and seeks different relief. Unlike Mamma Mia's, Bersin is suing not to enforce a federal statute, but to redress injury it directly suffered from OBWB's numerous alleged misrepresentations. OBWB has

11

failed to make a "strong and unequivocal showing of relitigation" as required by the Anti-Injunction Act. At best, OBWB has highlighted an issue to be decided by the state court. It has not made the showing required before a federal court may enjoin a party from prosecuting a state court claim.

The district court lacked the power to enjoin Bersin from proceeding with its claims in the state court action in the first place. Thus, the district court did not abuse its discretion when it vacated the injunction. Indeed, the true abuse of discretion would have been to enforce an injunction through its contempt power when it lacked the authority to enter injunctive relief at all.

**B.**

But, even if we were to assume that the district court had the power to enjoin Bersin from prosecuting its state law claims in Florida's circuit court, the entry of an injunction still would have been inappropriate. In originally entering injunctive relief against Bersin, the district judge found that the claims were barred by the Consent Judgment it had entered in the Mamma Mia's litigation. As an initial matter, it is unclear whether the Consent Judgment's language even encompasses the claims that Bersin raised in the state court. The Consent Judgment barred "any future litigation alleging violations of 35 U.S.C. § 292 or any other statute or law related to false marking or false advertising" against OBWB based on its claims of patent ownership. But Bersin has not alleged a claim related to false marking or

12

false advertising under § 292.  Nor does the broad catch-all language of the Consent Judgment cleanly apply to the fraud claims that Bersin has raised.  To the extent that Bersin's false patent claims figure into the broader lawsuit, they form only part of a much broader pattern of allegedly false and fraudulent statements.  That these false statements relate to the (non)ownership of patents is incidental to the essential action.  We are unpersuaded by OBWB's suggestion that a claim for fraud in the inducement under Florida common law constitutes litigation alleging a violation of a federal statute related to false marking or false advertising.

Passing over whether the Consent Judgment's language was broad enough to encompass Bersin's claims, there still would be no basis to bind Bersin to an agreement entered into by entirely separate parties in an entirely separate case.  "A court's judgment binds only the parties to a suit, subject to a handful of discrete and limited exceptions."  Smith, 131 S. Ct. at 2379; accord Steans v. Combined Ins. Co. of Am., 148 F.3d 1266, 1270-71 (11th Cir. 1998).  Among those exceptions, none of which apply here, are where a non-party actually participated and exercised some degree of control in the prior litigation, or in certain in rem property actions that may bind "the whole world."  Wright & Miller, Federal Practice & Procedure, §§ 4449, 4451 (2d ed.).  OBWB contends that Bersin is bound by the judgment entered in the Mamma Mia's case.  But OBWB offers no authority in support of the proposition that two parties can bind an unrelated third

party to a settlement agreement no matter how broad the language the parties chose to employ. It defies both logic and common sense to suggest as a general matter that a defendant settling one case may bind all future plaintiffs to an agreement they had no part in negotiating and from which they derived no benefit. Even the settlements of class action suits bind only the members of that class -- they do not affect individuals who opt out of or were otherwise not included in the class.

Nonetheless, OBWB argues that Bersin can be bound by a settlement agreement it had no part in negotiating because Mamma Mia's brought a qui tam action on behalf of itself and the United States. OBWB cites a series of district court opinions -- mostly unpublished -- in support of its view that only one party may bring a claim under the false marking statute. See San Francisco Tech., Inc. v. Graphic Packaging Int'l, Inc., 798 F. Supp. 2d 1333 (N.D. Ga. 2011); Eaglewood Consulting, LLC v. Graphic Packaging Int'l, Inc., No. 1:10-CV-03467-RWS, 2011 WL 2489944 (N.D. Ga. June 20, 2011); Simonian v. Irwin Indus. Tool Co., No. 10-1260, 2011 WL 147717 (N.D. Ill. Jan. 18, 2011); Simonian v. Quigley Corp., No. 10C1259, 2010 WL 2837180 (N.D. Ill. July 19, 2010). This argument is unavailable here both because Bersin has not brought a claim under the false marking statute and because the settlement of a qui tam suit could only bar the filing of a subsequent qui tam suit. Barring successive qui tam actions is appropriate because such actions implicate special concerns. In a qui tam action, a

14

private party (the relator) acts as a partial assignee of the United States and brings suit based on an injury in fact suffered by the government. Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1233 (11th Cir. 2008). Even though a private party controls the litigation, the United States is the real party in interest. United States v. R&F Properties of Lake Cty., Inc., 433 F.3d 1349, 1359 (11th Cir. 2005). It makes sense then for a qui tam settlement to bar a subsequent qui tam suit against the same defendant even though it is raised by a different relator. While the party controlling the litigation may have changed, the real party in interest -- the United States -- remains the same. Allowing successive qui tam suits for the same infraction would afford the government the option of bringing multiple suits against a single instance of actionable conduct.

Notably, that is not what we have in this case. Bersin is not bringing a qui tam action on behalf of the United States. Rather, it has sued on its own behalf in state court pursuant to state law to recover for injuries it sustained directly as a result of OBWB's actions. None of the concerns implicated by allowing successive qui tam actions are present here.

Nor, finally, does the law of the case doctrine require the district court to enforce its earlier injunction. OBWB argues that this Court had previously determined that the Consent Judgment barred patent-related allegations, which, in turn, bound the district court to adhere to that ruling. OBWB misapprehends our

15

prior ruling.  "Under the law of the case doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal."  This That And The Other Gift And Tobacco, Inc. v. Cobb Cty., Ga., 439 F.3d 1275, 1283 (11th Cir. 2006) (internal quotation marks omitted).  The doctrine applies to issues decided explicitly and by necessary implication.  Luckey v. Miller, 929 F.2d 618, 621 (11th Cir. 1991).  It does not reach issues that could have been but were not decided in the appellate court's opinion.  Id.

Our earlier ruling in this case determined that we lacked jurisdiction to entertain the appeal in the first place.  We explicitly declared that we passed "no judgment on whether the district court acted within its broad equitable authority in issuing so sweeping an injunction. We [said] nothing about the enforceability or indeed about the advisability of the injunction entered by the district court."  Original Brooklyn Water Bagel Co., 768 F.3d at 1330.  Far from determining the merits of the issue presented today, we did not rule on the matter precisely because we lacked the power to opine about the merits.  Thus, there was no law of the case on the merits for the district court to follow.  The law of the case doctrine, therefore, did not bind the district court to uphold its earlier injunction and the court did not abuse its discretion by lifting that injunction.

**AFFIRMED.**

16